## THE STATE v. J. C. MARTIN ET AL.

1. BOND. *Essentials thereof. Common-law rule. Our statute.*

   At common law, it was not necessary to the validity of a bond that it should be signed. but sealing and delivery were required. The common-law rule as to the essentials of a bond is not changed by our statutes, except by a provision that "a scroll, or any printed impression intended as a seal," shall be the equivalent of a seal.

2. SAME. *Sealing. How done, and how evidenced.*

   The seal to a bond may be affixed by any one, and its adoption by the person executing the bond will make it his own, but adoption is necessary; and the intention to adopt is essential to such adoption, though this may be inferred from circumstances, and does not require an express declaration thereof. "A scroll, or any printed impression intended as a seal," will do for a seal; but, if not made by the person intending to become the obligor, it must be adopted as his seal. Such adoption is usually shown by the subscription of the obligor's name to the instrument, and the delivery of the same by him as his bond, though it may be shown by other evidence. But, in the absence of the obligor's subscription, which is the customary act evincing the purpose to adopt a seal, the evidence of adoption in some other mode must be unequivocal, and leave n ᵻ doubt of the purpose to adopt the seal.

3. SAME. *Sealing. Incomplete bond. Case in judgment.*

   M., who had been elected sheriff of the county of C., was brought to the sheriff's office, in feeble health, to qualify for entering upon the duties of his office. A clerk presented to him, for his signature, a sheriff's bond, and a tax-collector's bond with an official oath indorsed upon it. M. signed the sheriff's bond and the oath of office, but did not sign the tax-collector's bond. The latter bond had been previously signed by those intending to become sureties thereon, and opposite each of their signatures was a printed impression for a seal; but the blank line opposite the first printed impression was left, the sureties signing below it. M. did not write the paper purporting to be his bond as tax-collector, nor read it, nor know what it was. He did not make the seal, nor know what it was intended for. But he thought, after signing the sheriff's bond and official oath, as stated, that he had done all that was necessary to qualify him for his office; and he proceeded to act as tax-

collector.  The tax-collector's bond contained the formula, "Signed, sealed, and delivered," etc.  Martin having made a default as tax-collector, the State brought an action on this paper against Martin and those who signed as his sureties, declaring it to be the writing obligatory of all the defendants. *Held*, that there was no evidence that M. adopted as his seal the printed impression left at the end of the horizontal line, or that he intended to adopt it as a substitute for his signature.  It is the universal custom at this day to subscribe bonds, and it is a just assumption that those who subscribed this paper did so on the implied condition that M. should subscribe it.

ERROR to the Circuit Court of Copiah County.

Hon. S. S. CALHOON, Judge.

This action was brought in behalf of the State against J. C. Martin and others, as joint and several obligors on a bond alleged to have been executed by Martin as tax-collector of Copiah County, with the other defendants as sureties, conditioned for the faithful collection, and payment into the proper treasuries, of the State and county taxes.  The declaration described the instrument sued on as the writing obligatory of all the defendants.  Martin pleaded, amongst other pleas, *non est factum*.  The other defendants pleaded fourteen pleas, of which the eleventh was *non est factum*, with the special averment that they signed the supposed bond on the condition that it should be executed by Martin as his official bond, and he did not do this; the twelfth was to the effect that the supposed bond, in the obligatory part thereof, contained the name of J. C. Martin as one of the obligors, and the intention was that he should become one of the obligors, but, contrary to this intent, he failed to execute the bond; the thirteenth plea was, in substance, that Martin did not qualify by taking the oath and giving the bond required by law.

J. C. Martin was, on the trial, introduced as a witness for the plaintiff, and he testified to the following effect:   He, being enfeebled by illness, was brought to the sheriff's office, that he might qualify as sheriff and tax-collector of Copiah County. He did not write the bond sued on; did not read it; did not know whether he was to sign one or two bonds, but attached his signature as the clerk, who brought the papers to him,

directed him. He took and subscribed the oath of office. He did sign a sheriff's bond, but did not sign the tax-collector's bond. His signature is not to the bond sued on. The bond was taken, by his direction, by his brother, A. M. Martin, to get the signatures of his sureties. He (witness) left the bond with the clerk who brought it to him, and supposed he had done all that was required; and he then proceeded to act as tax-collector, and collected taxes. He signed all the papers he was told to sign. He gave no other tax-collector's bond.

J. P. Matthews, also, was introduced as a witness for the plaintiff, and he testified, in effect, that he was sheriff of the county when Martin came into office; that Martin several times demanded of him the office of sheriff, saying that he had executed a bond which was then on file in the clerk's office; and that he (witness) refused at first to give up the office to Martin, but when he learned that Martin's bond as sheriff and tax-collector had been filed for record, he gave up the office. The defendants objected to this testimony of Martin and Matthews.

The plaintiff's attorneys offered in evidence, as the instrument sued on, a bond, with the indorsements thereon. It was a printed form, with blanks, and at the place for the signatures there were several horizontal lines, leading each to a printed impression intended for a seal. The first of these lines was left blank by the sureties, who signed on the lines below.‘ The indorsements on the bond consisted of the written official oath subscribed by Martin, the affidavits of the sureties as to their solvency, and the approval of the bond by the president of the Board of Supervisors and the chancery clerk. When the bond was offered in evidence, the defendants objected to its introduction, and moved to exclude it and the testimony of Martin and Matthews from the consideration of the jury. The court sustained the motion. The verdict and judgment were for the defendants.

*T. C. Catchings,* Attorney-General, for the plaintiff in error.

1. It is manifest that Martin intended to execute the bond,

and thought he had executed it.   His sureties intended to become bound, and for that purpose executed the bond. Having delivered the bond as his deed, Martin must be presumed to have adopted the seal on the line left for his signature as his seal.   A seal was necessary to the validity of the bond, and one was affixed to it when delivered.   He is bound to a knowledge of all that appeared on the bond ; is presumed to have known that the seal was there, and to have adopted it as his own.   Sealing and delivery are necessary in the execution of a bond, but not signing.   7 Bac. Abr. 243 ; 17 Ves. 459 ; *Brown* v. *Hadley*, 1 C. P. 733 ; 1 Chitty on Con. 4 ; *Plummer* v. *Russell*, 2 Bibb, 174 ; *Sicard* v. *Davis*, 6 Pet. 135.   The fact that it is now the universal custom to sign bonds does not alter the rule which dispenses with signing.   The custom of signing such instruments prevailed also in the time of the *Normans.* 1 Broom & Had. Com. 733.

2.  The testimony excluded tended to show that Martin signed the bond, and should have been admitted.   He intended to sign it, and thought he had done so.   He signed every thing that the clerk brought him to sign.   I insist that the signature to the oath was regarded by him as a signing of the bond.   The delivery showed that he intended the bond as his deed.   *Armstrong* v. *Stovall*, 26 Miss. 281 ; 12 Cal. 574 ; 10 Pick. 297 ; 5 Leigh, 422.   The signature to an instrument may be put on any part thereof.   64 Me. 32 ; 14 Johns. 487 ; 7 Wend. 345 ; 3 Hen. & M. 145–186.

*T. C. Catchings*, Attorney-General, also argued the case orally.

*Harris & George*, for the defendants in error.

1.  The statutory seal, flourish of the pen, or printed impression, means such flourish or impression at the end of a signature to denote the character and grade of the instrument. 4 Kent's Comm. 524 ; *Bohannon* v. *Hough*, Walk. 461 ; *Wright* v. *The Vesta*, 5 How. 152 ; *Whittington* v. *Clarke*, 8 Smed. & M. 480 ; *Pierce* v. *Lacy*, 23 Miss. 193 ; *Ashwell* v. *Ayres*, 4 Gratt. 283 ; 1 Wash. 170 ; 4 Munf. 442 ; *Cromwell* v. *Tate*,

7 Leigh. A fantastical flourish of the pen, or a printed impression, means nothing unless placed at the end of a name or signature. The use of the signature to authenticate private writings has been universally adopted for more than a half century. The common law has given way in this instance, as in many others, without legislative repeal.

1. The signing of the official oath by Martin cannot be regarded as a signing of the bond. Although not necessary that the signature to an instrument should be at the usual place for signing, yet it is necessary that the signature should be intended as an authentication and completion of the instrument. If it appears that other signing was intended, and that is wanting, the instrument is incomplete, and not binding. Roberts on Fr. 376 ; 1 Chitty on Con. 98 ; 3 Man. & G., 42 Eng. Law & Eq.752. Martin intended to sign the oath of office, and not the tax-collector's bond. He did not know that such bond was required. The oath of office and bond were entirely independent of each other, and being on the same sheet of paper cannot render them less so.

3. The bond, on its face, purported to be an instrument to be signed by Martin as principal, and the other defendants herein as his sureties ; and as it was not executed by Martin, it is therefore void. The bond is incomplete, according to the intent of the signers thereof. *Read* v. *McLemore*, 34 Miss. 110 ; 4 Watts, 21 ; 22 Ind. 399 ; 16 Wall. 1 ; 4 Cranch, 219 ; 2 Pick. 24 ; 14 Cal. 421 ; 11 Vt. 447.

*W. P. Harris*, of counsel for the defendants in error, argued the case orally.

CAMPBELL, J., delivered the opinion of the court.

The single question to be decided is, whether the bond sued on is the bond of Martin and the other defendants. At common law, signing by the obligor was not necessary. Sealing and delivery were all that was required. Sealing was the all-important thing. Delivery, without sealing, was not sufficient. At first, sealing consisted in impressing wax or wafer with the seal of the obligor, which contained some distinctive

device peculiar to him, and which individualized his act of sealing. Afterwards, it was permitted to many persons to use the same wax or wafer, if each made his own distinct impression upon it. Finally, it became settled that the seal might be affixed by the person preparing the writing, or by any one, and its adoption by the person executing the instrument made it his seal; but adoption was necessary, and intention to adopt was essential to adoption, though this might be inferred from circumstances, and did not require an express declaration.

We have no statute defining a bond, or changing the common law as to the essentials of a bond, except that which makes "a scroll, or any printed impression intended as a seal," the equivalent of a seal. Except in this respect, the common law as to bonds is in force here, from which it results that a bond may be executed by sealing and delivery by the obligor. He need not sign, but he must seal and deliver it. "A scroll, or any printed impression intended as a seal," will do for a seal; but if not made by the person, but by some one else, it must be adopted by the obligor as his seal. Adoption of the seal made by another is usually shown by the subscription of the name of the obligor to the instrument, and delivery by him of the bond as his deed. It may be shown by other evidence of the purpose of the obligor to adopt as his the seal or substitute made by another, but it must satisfactorily appear that he made it *his* seal; and where the customary act of evincing a purpose to adopt such seal, by subscribing the name, is not done, the evidence of an adoption of the seal in some other mode should be unequivocal, and leave no doubt of the purpose of the person to adopt the seal as a means of executing the instrument.

We know precisely what occurred in reference to the paper sued on, in its alleged execution by Martin, and we are to decide whether it amounted to an adoption by him of the seal made by another for him, and opposite to which it was intended that he should write his name. He did not write the paper, nor read it, nor sign it, nor know what it was. He

did not make the seal, nor see it, nor know what it was intended for.   He took the oath of office, written on the same paper, and subscribed that ; but that had no reference to the bond, as a bond.   There was no declaration by Martin that he adopted the seal which had been prepared for him. There is no evidence of an intention by him to adopt the scroll at the end of the horizontal line left for his signature to the writing, as a substitute for his signing.

It is manifest that the bond was not completed according to its form and the contemplation of the signers.   It contains the usual formula, " Signed, sealed, and delivered," etc.   It was subscribed by the sureties below the line left for the name of Martin, who was to be principal.   It is the universal custom, at this day, to subscribe bonds.   It is a just assumption that this paper was to be subscribed by Martin, and those who subscribed it as his sureties did so on the condition implied, though not expressed, that he should subscribe it, and that they would not subscribe it except with the understanding that he should do so, and thus make the instrument *per se* to show that it was his bond.

In *New Orleans Railroad Company* v. *Burke*, 53 Miss. 200, the bond had two seals and three subscribers, and the question was whether the third subscriber had adopted the seal of one of the others, there being no seal against his name.   It was held that it was not necessary for each obligor to have his own separate seal, but that one might adopt the seal of another, and that circumstances showed such adoption by the subscriber who had no seal against his name.   In that case, there was the name subscribed without a separate seal.   Here, there is a seal and a blank for the name, but the name is wanting.

In *Bean* v. *Parker et al.*, 17 Mass. 591, it was held that bail are not liable unless the bail-bond be executed by the principal ; and in *Sacramento* v. *Dunlap et al.*, 14 Cal. 421, and *The People* v. *Hartley*, 21 Cal. 585, it was held that no recovery could be had on a bond purporting to be the joint bond

of the principal and sureties, but signed by the latter only.   In this case, the bond is sued on as the obligation of all the defendants ; and, unless it is the bond of all, it was not sufficient as evidence to maintain the declaration, and the variance is fatal.   No other question is presented, and the judgment of the Circuit Court is affirmed.