WIRT ADAMS, STATE REVENUE AGENT, v. FRANK I. WILLIAMS
ET AL.

[52 South. 865.]

1. CHANCERY COURT. *Jurisdiction. Official bonds. Constitution 1890, sec. 161. Code 1906, § 556.*

Under Constitution 1890, sec. 161, and Code 1906, § 556, providing that the chancery court shall have jurisdiction of suits on bonds of public officers for failure to account for money or property received, the chancery court has jurisdiction of a suit on the bond of the treasurer of a board of levee commissioners.

2. STATE REVENUE AGENT. *Code 1906, § 4739. Levee board. Officers. Suits on bonds.*

The state revenue agent, under Code 1906, § 4739, prescribing his duties, may maintain a suit on the bond of the treasurer of a board of levee commissioners.

3. OFFICERS. *Official bonds. Defects. Failure of principal to sign. Code 1880, § 403, Code 1892, § 3055, Code 1906, § 3463. Unnecessary conditions. Surplusage.*

Under Code 1880, § 403, Code 1892, § 3055, Code 1906, § 3463, providing the conditions of official bonds and enacting that a failure to observe the matters therein prescribed shall not vitiate any bond;

(a) It is immaterial that the treasurer of a levee board failed to sign his bond as principal, where the bond was delivered as his official bond and was received and acted upon as such; and

(b) An official bond, substantially complying with the statute under which it was given, is not invalidated by the addition of a condition not required by law, since such a condition is mere surplusage.

4. INTEREST ON PUBLIC FUNDS. *Liability for on official bond.*

Interest collected by a treasurer of a levee board, on money belonging to the board, deposited by him in a bank, comes into his hands by virtue of his office, and he and the sureties on his official bond are liable therefor, although it was a misdemeanor

97 Miss.—8

to use the money for his own benefit and he deposited it stipulating for the payment of the interest to himself as an individual.

**5. SAME.** *Same.*

An officer is not entitled to retain interest on public funds collected by him, although he is an insurer of the funds.

FROM the chancery court of, second district, Coahoma county. HON. MANUEL E. DENTON, Chancellor.

Adams, state revenue agent, appellant, was complainant in the court below; Williams, former treasurer of the board of levee commissioners, and the Aetna Indemnity Company of Hartford, Connecticut, appellees, were defendants there. From a decree sustaining separate demurrers of the defendants to the bill of complaint and dismissing the suit, complainant appealed to the supreme court. The opinion of the court states the facts.

*O. G. Johnston,* for appellant.

Section 161 of the Constitution of the state of Mississippi provides that the chancery court shall have concurrent jurisdiction with the circuit court of suits on bonds of fiduciaries and public officers. Code 1906, § 566, is identical with section 161 of the Constitution; hence, this suit, being one based on the bond of a public officer, is properly brought in the chancery court.

In answer to the objection of appellee that the state revenue agent is not the proper party to maintain this action we refer the court to Code 1906, § 4739, in which the duties of the state revenue agent are enumerated, and by which it is made his duty to investigate the accounts of levee board officers, and to maintain suits against them. This power has been recognized by this court.

In this case the surety on the bond in question is a corporation organized to make such bonds or undertakings; it agreed to become surety for a valuable consideration paid to it by the party relying upon it for protection; hence the doctrine that

a surety is a favorite of the law and that a claim against a surety is *strictissimi juris* does not apply; for while the Aetna Indemnity Company may term itself a surety company, its business is nevertheless in all essential particulars that of an insurer, and this contract should be construed most strongly in favor of the obligee.   32 Cyc. 307.

In *State v. Martin,* 56 Miss. 108, it was held that, the principal having failed to sign his bond, the bond was therefore void or incomplete.   That case was, however, decided in 1878, and under the Code of 1871.   Since that time, and in fact since the adoption of the Code of 1880, the law regarding liability on official bonds has been materially changed. Code 1880, § 403, after prescribing the condition of an official bond, provides that all official bonds however irregular, whether approved or not, "shall be obligatory on every one who subscribes it as such for the purpose of making the official bond of such officer."   Prior to the adoption of this statute, Code 1871, § 309, governed such matters and omitted the words "every one who subscribed it as such," merely providing that the failure to make the bond conditioned as provided by the statute should not vitiate the bond, using this language: "And the official bonds shall be valid and binding in whatever form they may be taken."

Code 1880, § 403, was brought forward as Code 1892, § 3055, and is now in the Code 1906, as Code 1906, § 3463.   Manifestly the legislature intended to cure the evil disclosed in the *Martin case, supra,* by making a bond binding upon all who should subscribe it without regard to its approval and without regard to whether or not the instrument be signed by the principal.   This particular question is not one of first impression in this court, the identical point having been settled by this court.   *Gloster v. Harrell,* 77 Miss. 793; *Hall v. Lafayette,* 69 Miss. 529; *McLeod v. State,* 69 Miss. 221; 6 Cyc. 1452.

It has frequently been decided in other states that the failure

of a principal to sign a bond would not release the sureties in the absence of any testimony to the fact that they made the affixing of his signature a condition precedent to their liability. *State v. Bourman,* 10 Ohio, 445; 42 Barb. 52; 2 Hall (N. Y.), 584; *Pima County v. Snyder,* 44 Pac. 297; *Cockrill v. Davie,* 35 Pac. 958.

The foregoing cases dealing with bonds signed by individuals for accommodation are much stronger than cases of guaranty companies making surety bonds and receiving a valuable consideration for so doing. There is no statute requiring an officer to subscribe his official bond. It is simply made his duty to give an official bond. The law provides that he may do this by individual sureties, or by making bond with a surety company. A bond given with a guaranty company as surety is nothing more nor less than an insurance contract deliberately entered into, by virtue of which contract the guaranty company binds itself to protect the obligee from loss for a valuable consideration and its liability is distinct from the liability of an officer.

The bond made by the Aetna Indemnity Company was a public record. The company had its agents and attorneys in the city of Clarksdale, in which city the bond was recorded. It had every opportunity to ascertain whether or not the bond had been signed, and if it neglected to do this, it was its own negligence. It will be observed that the company was careful to collect the annual premiums for the services which it alleges having rendered to the levee board.

The surety company is endeavoring to avoid liability because of William's failure to sign, and thereby take advantage of a mere technicality. It is not for the treasurer or his sureties, the money of the town being traced to his hands by other competent evidence, to find shelter under the absence of a mere receipt warrant, or the fact that his bond was approved by the resolution. Neither he nor the surety company can now be heard to make such a defense. *Gloster v. Harrell, supra.* It makes no

difference what conditions were written in the face of the bond, or whether or not the bond was approved. One who enters office and the sureties on his official bond by virtue of which he enjoys the office are alike estopped to deny the validity of the bond given by them. *State v. Smith,* 87 Miss. 551.

When one having the right to accept or reject a transaction, takes and receives benefits thereunder, he becomes bound by the transaction and cannot avoid its obligation or effect by taking a position inconsistent with such action. It has been repeatedly held that a person by the acceptance of benefits may be estopped from questioning the existence, validity and effect of a contract; so too, under similar circumstances, one may be estopped from denying the existence, validity and effect of a deed or bond. 16 Cyc. 787.

It is contended by appellees that the bond is void because containing conditions not prescribed by the statute, and because it contains a provision that the surety should not be liable on account of any loss occasioned by reason of the funds being deposited in a bank. But, in the first place, the money here sued for was not money lost by reason of a deposit in the bank. The loss was caused solely by the action of the treasurer in refusing to account for and pay over money received by him; however, this condition makes no difference in the bond, and should be read as though it were not there.

Code 1892, § 3055, provides how the bonds of all officers required to give bond shall be conditioned. That code section further provides that a failure to observe the form prescribed shall not invalidate any official bond. The bond of the levee board treasurer is well within the scope of that section. It is true that the bond is not payable to the state of Mississippi. It is also true that Code 1906, § 3464, provides that the bonds of all public officers shall be made payable to the state; however, this section is qualified by the act of the legislature creating the office of treasurer of the levee board, and provides that

his bond shall be payable to the board of levee commissioners. *Town of Gloster v. Harrell, supra; Faurote v. State,* 11 N. E. 472; *U. S. Fidelity, etc., Co. v. Union, etc., Co.,* 38 South. 177; *State v. Smith,* 87 Miss. 551; *Cox v. Ross,* 56 Miss. 481.

The failure on the part of the levee board to approve the bond given by Williams cannot avail the surety company, since Code 1892, § 3055, provides that the fact that the bond was not approved shall not invalidate the bond provided it has served as the official bond. There are some authorities holding that approval is necessary, but all such cases are where a bond was tendered by the officer and rejected by the parties imposed with the duty of approving same, and are not cases in which the bond was accepted and served as the official bond.

Assuming that the failure of Williams to sign the bond rendered it void and released the sureties from liability, that would not deprive a court of equity of jurisdiction. 29 Cyc. 1454; *Gloster v. Harrell,* 79 Miss. 794; *State v. Smith,* 87 Miss. 551; 3 Words and Phrases, 2498; *Boone County v. Jones,* 54 Iowa, 699.

It must be conceded that Williams is liable for the money sued for. His contention is that the court below is without jurisdiction. This being true, this appellate court is called upon to say whether or not Williams can seek shelter behind the fact that he failed or neglected to subscribe his bond, which he adopted as his official bond in this case. He was both the secretary and treasurer of the board.

The failure of the board to detect the fact that Williams had not subscribed his bond was doubtless due to the confidence and trust in his integrity and fidelity, believing that he had done all things necessary to entitle him to enjoy the privileges of serving as treasurer of the board, whereupon the board entrusted to him the funds of the people and treated him in all respects as a lawful and qualified officer. Hence he cannot now be heard to set up in his own defense the fact that he, by his own negligence, misled the board and betrayed the confidence placed in him.

Where one having the right to accept or reject a transaction, takes and retains benefits thereunder, he becomes bound by the transaction and cannot avoid its obligations or effects by taking a position inconsistent therewith.   16 Cyc. 787.

Recourse is here had to a court of equity as affording the fullest and most complete remedy.   The mere existence of a remedy at law does not deprive equity of jurisdiction unless the remedy be adequate.   *Boyce v. Grundy,* 7 L. Ed. (U. S.) 755; *Snowden v. Willis,* 19 Ind. 10; 1 Pomeroy, Eq. Jurisdiction (3d. ed.) 155; *May v. LaClair,* 20 L. Ed. (U. S.) 50; 19 Cent. Dig. 151, 152; *Conger v. Bowen,* 31 Ga. 382; *Barnes v. Lloyd,* 1 How. (Miss.) 584.

The test of the right to equitable interposition is not merely that there is a remedy at law, but that the remedy must be adequate—as practical and efficient to the cause of justice as the remedy in equity.   *Erwin v. Lewis,* 50 Miss. 363; *Gloster v. Harrell, supra; Barkwell v. Swan,* 69 Miss. 907; *Hall v. Lafayette County,* 69 Miss. 529.

We now consider the question as to the liability of the surety for the money sued for.   Assuming for the time being that the principal, Williams, is liable as we have seen that the bond given was one given in compliance with the public statute.   A bond is binding on the sureties as to all of the conditions prescribed by the statute whether these conditions be written in the face of the bond or not.   5 Cyc. 748; *Cox v. Ross,* 56 Miss. 481; *State v. Chadwick,* 10 Or. 465; *Harris v. Hanson,* 11 Me. 241; *Lewis v. State,* 65 Miss. 468; Brandt on Suretyship, § 452; Murfree on Official Bonds, § 211; *People v. Treadway,* 17 Mich. 480; *Armington v. State,* 45 Ind. 10; *Mashaska County v. Ruan,* 45 Iowa, 328; *Kane v. Union Pac. R. Co.,* 5 Neb. 105; *Fox v. Meacham,* 6 Idaho, 530; Throop on Public Officers, § 255.

Has the custodian of a public fund the right to invest that fund and retain the profits resulting from such an investment? A court of equity exacts fidelity and loyalty from agents and

fiduciaries of every sort to their principals and will strip them of every advantage obtained by a breach of trust and confidence. *Gillenwaters v. Miller Gen. Co.,* 49 Miss. 150; *State v. Harney,* 57 Miss. 886; *Adams v. Sanders, supra; Griffin v. Levee Commission,* 71 Miss. 767; *State v. Lee,* 72 Miss. 281; *State v. McFetridge,* 20 L. R. A. 223.

*D. A. Scott,* for appellee Williams. ·

As concerns the question whether a court of chancery has the power and authority to retain this case after having determined that the alleged bond upon which the suit is based was void, we think the authorities are abundant and conclusive in favor of the contention that the court below had no such authority, and that the demurrers of appellees were properly sustained. The case of *State v. Martin,* 56 Miss. 108, is absolutely conclusive as to the proposition that the failure of the appellee, Williams, to sign the bond in question *ipso facto* rendered the same null and void either as against him or his co-appellee. *Beam v. Parker,* 17 Mass. 591; *City of Sacramento v. Dunlap,* 14 Cal. 421; *Wood v. Washburn,* 2 Pick. 24; *Sharp v. United States,* 4 Watts, 21; *Frazier v. Austin,* 11 Vt. 447; *Johnson v. Erskine,* 9 Tex. 1.

We insist that the pretended paper called a bond by appellant, is no bond at all, and therefore it cannot be sustained by reasons of the provisions of Code 1906, § 3463, or any other similar law, either statutory or otherwise. That such is the proper construction to be placed upon the above mentioned section, see *State v. Smith,* 87 Miss. 551.

We do not pretend to say, nor do we want to be understood as saying, that if the bond in question had been legally delivered to and accepted and approved by the board of levee commissioners, it would not have been a valid instrument, even in the absence of the signature of Williams. What we do say, however, is that in the absence of allegations showing any of these

important facts, the bond is absolutely and positively invalid, not being the deed of the appellee Williams.

In 1882, many years after the Code of 1871, § 309, had been enlarged so as to read as section 3463 of the present code, Judge COOPER, speaking for the court, said: "One of the prerequisites for giving validity and effect to an official bond is that it shall be approved by the proper authority as required by law." *Andrews v. Covington*, 69 Miss. 740. The bond of Williams was not even tendered by him, or by the surety company to the board of levee commissioners, or to any one authorized to act for them, but was merely handed by the agent of the surety company to Williams, who, for some unknown reason, did not sign the same but simply kept it in his possession; and notwithstanding, it is insisted by appellant that said bond was filed by Williams as secretary of the board of levee commissioners, in his office, and that it was afterwards recorded as required by law in the chancery clerk's office of Coahoma county, Mississippi, yet the same was not so filed nor was it so recorded, and this suit being based upon that particular bond, the exhibit on demurrer is controlling. Code 1906, § 1575, expressly requires that the bond shall be delivered by the party making it, to take effect as his obligation. How shall a bond, such as we are dealing with in this case, be delivered? Certainly not by the principal to the principal, as was alleged and as was done in this case. Undoubtedly this statute contemplated that the bond should be delivered by the party making it to whomsoever has the legal right to receive, accept and approve the same. This was not done in the instant case, and therefore the paper sued on is not, in legal contemplation an official bond. Again we find that Code 1906, § 4634, is as follows: "The bonds of all officers and all bonds in any legal proceeding shall be binding and obligatory on all the signers, without a seal, or representation of a seal, in the same manner as if duly sealed." Thus it is again indicated that the lawmakers never at any time in the

history of our jurisprudence intended that a bond shall be valid and obligatory in the absence of the signature of the principal obligor thereof, unless such bond was delivered to, and accepted and approved by the legally constituted authorities.

It is insisted by appellant that neither of appellees should be permitted to question the validity of this bond, because, it is furthermore stated, that under and because of the doctrine of equitable estoppel they are precluded from so doing. According to our judgment, it is wholly unnecessary to discuss this particular feature of the case, for, if this question should arise at all, it cannot arise at this time, if for no other reason, because the facts as alleged in the bill and as shown by the exhibits do not of and in themselves present a case for the application of this doctrine.

It cannot be successfully contended if the bill in this case discloses, as we insist it does, no ground of equitable jurisdiction, that any relief whatever can be granted appellant. Where the bill states matters within equity jurisdiction, and the complainant fails to establish such equity, the rule is that the bill must be dismissed, and cannot be sustained for the purpose of allowing legal relief to which the complainant has shown himself entitled. 16 Cyc. 109–111 and note 8.

It is further insisted by appellant that even though it be necessary to the validity of the bond in question that Williams should have signed the same, yet, nevertheless, as contended by learned counsel for appellant, it is a good bond because it was accepted by the board of levee commissioners as the official bond of Williams. There is nothing in this record to indicate that the bond in question was ever accepted by the board of levee commissioners, was ever delivered to, or was ever approved by the board, and notwithstanding that appellee Williams may have considered the bond as his official bond, yet it cannot be said that by any such action on his part that such bond was rendered a valid, subsisting and binding obligation.

When a prayer for general relief is sufficient to justify a court of equity in granting relief not specifically prayed for, the specific relief so granted will depend essentially upon the proper frame and structure of the bill; the court will only grant such relief as the case stated will justify, and will not ordinarily be so indulgent as to permit a bill framed for one purpose to answer another. Story, Equity Pl. § 42. *Rawlins v. Lambert,* 1 Johns. & H. 458; *Redmond v. Dunn,* 3 Bosw. (N. Y.) 316; *Matthews v. Green,* 35 L. J. C. 1; *Kearney v. Kline,* 67 Miss. 473.

The bond sought to be enforced in this proceeding does not in any respect comply with the requirements of the law applicable to such bonds, in that the conditions incorporated in the body of the bond are in no respect such as the law requires.

The supreme courts of Maine and Texas have held that a statutory bond to be good as such, must be conditioned and executed according to all the requirements of the statute. *Howard v. Brown,* 21 Me. (8 Shep.) 385; *Lewis v. Lewis,* 4 Tex. 1. The statutory bond is vitiated by the omission of a material condition of the statute. *Dixon v. United States,* Fed. Cas. 3,934 (1 Brock. 177). Where a statute requires a bond to be payable to the state, and it is taken payable to the governor, such bond was held void. *Lawton v. State,* 5 Tex. 270.

Money received by an officer by virtue of his office, is a trust fund. A surety on his bond should not be held accountable for interest received by the officer on deposits of public money. *Renfoe v. Colquit,* 74 Ga. 618. The distinction between an official act for which the bond is security, and an unofficial act intimately connected with official duty, for which no liability attaches to the sureties on the bond, is illustrated in *Brown v. Pitts,* 6 Smed. & M. 51. And see *State v. Conover,* 28 N. J. Law, 224; *Commonwealth v. Swop,* 45 Pa. St. 535; *Furlong v. State,* 58 Miss. 717; *People v. Treadway,* 17 Mich 480.

Any money received by a public officer pursuant to law and.

in his official capacity is received by virtue of his office, and for such he and his bond are responsible. But if th^ money be received otherwise, it will be considered as received by color of his office only. For the former the surety on the bond is liable, but not liable for the latter. *People v. Pennock,* 60 N. Y. 421; *Scheuster v. Weisman,* 63 Mo. 552; *Gerber v. Ackley,* 37 Wis. 43; *Taylor v. Parker,* 43 Wis. 78; 29 Ind. 294; 19 Wend. 283.

*J. W. Cutrer,* for same appellee.

The state of Mississippi authorizes the bonds of treasurers to be made, in whole or in part in surety or guaranty companies doing business in this state, whether foreign or domestic; and provides that the board may cause the bonds of such treasurers to be changed from time to time as the board may deem necessary to protect their interest. The law further empowers the board to contract with surety companies for the making of any bonds upon such terms as they may see proper; and further provides that before a bond shall be made in a guaranty or surety company, the trustworthiness of the company itself shall be passed upon by the board, and that only such company or companies shall be dealt with as the board, in its judgment, deem safe and solvent. Laws 1897, 1, 2.

The board is, therefore, authorized to enter into a contract of indemnity with any surety or guaranty company underwriting the fidelity of any person, whether the person whose conduct is underwritten shall have signed the obligation or not. The conditions of such bonds are fixed by the statute, that is, they shall be conditioned for the faithful discharge of the duties devolved upon them. Laws 1897, *supra.*

Thus it will be seen that a different system has been built up by legislative enactment for the management and government of the affairs of the board, from that which the general law prescribes with reference to the management of the affairs of the state and county under somewhat similar circumstances.

The treasurer of the board is not an officer in the sense nor within the terms and provisions of Code 1906, chapter 101, the different sections of which are brought forward from the Code of 1892.

It is to be observed in this connection that the obligation, which is sued upon, is an obligation of the Aetna Indemnity Company only, and that the obligation is one which extends. only to an indemnity by the said company on behalf of the board, to indemnify them against loss by reason of any act of the appellee Williams.

The appellant erroneously seeks to apply the principles of estoppel *in pais* or by misrepresentation to the facts of this case,. and thereupon to have this court determine in a matter incidental to the relief sought, that the appellee Williams is estopped to deny the absence of his signature from the bond, and to deny the jurisdiction of this court to maintain this suit.

It must be borne in mind that the suit was brought by the board acting through its representative, the state revenue agent.. The board is the other party to this claim of estoppel, and in. considering whether the claim is or is not maintainable, the fact should be observed.   The board was not an individual, but was a *quasi*-municipal officer charged with the performance of certain duties.   The appellee was their employee subject to their instructions, and could have been legally dismissed at the pleasure of the board.

In order to create an estoppel by misrepresentation or conduct, such misrepresentation or conduct must of and in itself have been sufficient to warrant some affirmative action on the part of the person setting up the estoppel, and still, if notwithstanding such misrepresentation or conduct, any such other person was, under the law, obliged to inquire for the existence of some other fact or facts, and to rely upon them to sustain such action as he may have adopted, he cannot complain that the conduct of the other party was the cause of the action and

no estoppel will arise. It is an essential of the general rule that the party who seeks to set up the estoppel should not only have been destitute of the knowledge of the real facts concerning the matter in controversy, but should have been without available means of acquiring such knowledge.

The party setting up an estoppel is bound to the exercise of reasonable diligence, and if he acts or refrains from acting upon the matter with a careless indifference to means of information reasonably within his reach, he will not be entitled to complain. 16 Cyc. 734; *Tobin v. Allen,* 53 Miss. 563; *Sulphine v. Dunbar,* 55 Miss. 255; *Staton v. Bryant,* 55 Miss. 261; *Davis v. Bowmar,* 55 Miss. 671; *Evans v. Forstall,* 58 Miss. 671; *Murphy v. Jackson,* 69 Miss. 403; *Stockner v. Wilczinski,* 71 Miss. 340; *Hart v. Livermore Co.,* 72 Miss. 809; *Millsaps v. Shotwell,* 76 Miss. 923.

It must furthermore be borne in mind that appellee was, at the time of the occurrence of the matters complained of, in the employ of the board; and that the doctrine of estoppel is not generally applied with respect to official action, especially as between persons occupying official relations towards each other.

Appellee invokes a further rule of universal application in the consideration of the doctrine of estoppel, that to create an estoppel *in pais,* the party pleading it must have been misled to his injury; that is, he must have suffered a loss of a substantial character, or been induced to alter his position for the worse in some material respect.

Appellee cannot be held to be a bailee as to the funds of the board, and, not being a bailee, his alleged liability as such cannot be increased in any manner whatever.

There is no authority in the board to direct the disposition of the funds which came into the hands of appellee; nor, according to the record, was any such disposition sought to be directed by it, as was attempted in *Slate v. Lee,* 72 Miss. 281,

where the treasurer was held liable, notwithstanding the order of the board to the contrary.

*W. A. Alcorn, Jr.,* for appellee, Aetna Indemnity Company.

Assuming for the purposes of argument that the bond in this case, although not signed by Williams, the principal, is a valid and binding obligation, the general question raised by the demurrer and which was decided by the lower court in favor of the bond company is this: Is the bond company liable for the money sued for? No money is sought to be recovered except the interest on the deposits in question.   The demurrer admits that the interest was received as stated in the bill and was not accounted for.   Unless the interest is the property of the board, the bond company is not liable.

The board is the creature of the legislature.   It was organized under the Act of February 28, 1884, for the specific purpose of building and maintaining the levee.  Its revenues for this purpose were then and now are obtained by taxation, except that in some instances bonds may be issued but these bonds are paid in this way.   Its revenues can be raised in no other way than that prescribed in the act referred to and subsequent acts of the legislature.

It is contended by appellant that Williams, the treasurer, is the agent of the levee board; that when he received interest on the money in question he acted as the agent of the board and therefore the interest belonged to the board.   But the *Harney case,* 57 Miss. 886, and the *Saunders case,* 89 Miss. 784, relied on by appellant to support their position, do not apply here because the tax collectors in those cases were compelled to pay the taxes in question over to the proper authorities after having collected them.

In the present case Williams was not compelled to receive interest and the board had no power to allow him to deposit the

money at interest. He in no sense acted as the agent of the
board and was not required to collect the interest and pay it
over. The transaction was really a gratuity on the part of the
bank to Williams because the money was deposited with them.

But conceding that Williams, as treasurer, was the agent of
the levee board he had no right to contract with the bank for
the interest unless authorized to do so by the board, or unless
such act was ratified by the board; and if the levee board did
not have the power in the first place to lend money at interest,
it certainly had no power to authorize its agents to do so, and
cannot reap the benefits of the unauthorized act of its agent.
Indeed, it is the general policy of this state to prohibit any
officer from making a contract on the part of the state or county,
city, town or village unless authorized to do so by law.

Code 1906, § 3474, reads as follows: "An officer shall not
enter into any contract on behalf of the state or any county,
city, town or village, thereof, without being specially authorized
thereto by law, or by an order of the board of supervisors or
municipal authorities." While this section does not apply di-
rectly to the levee board, it does show that under the laws of
this state, an officer can do nothing outside of his duties pre-
scribed by law unless authorized to do so by proper authority.

The treasurer is held to a strict accountability of the funds
coming to him and no provision has been made as to the profits.
Section 29 of the act creating the levee board, approved Feb-
ruary 28, 1884, expressly prohibits in plain terms any com-
missioner, officer, member of the board of levee commissioners
therein created, agent or other person intrusted with the care,
control or custody of any of the money, etc., from using it in any
way or lending it contrary to law. The purpose of the legisla-
ture was to prevent a dissipation of the funds. It made the
treasurer an absolute insurer for the safe-keeping and account-
ing for them and nothing will excuse the treasurer from liability
under this duty save the act of God or the public enemy. *Grif-*

*fin v. Levee Board,* 71 Miss. 769; *Adams v. Lee,* 72 Miss. 281; *Arnold v. State,* 77 Miss. 469; *Malloy v. Bernallion,* 52 L. R. A. 126.

Under the general proposition that the bonding company is not liable for the interest sued for, see *Wilksbarre v. Rockefeld,* 30 L. R. A. 395; *Renfro v. Colquitt,* 74 Ga. 618; *People v. Walsen,* 15 L. R. A. 456; *Commonwealth v. Godshaw,* 39 Ky. 17; *Bocard v. State.* 79 Ind. 270; *Purley v. County,* 32 Mich. 132; *Cooper v. People,* 85 Ill. 417; *Seland v. Nashville,* 27 Cal. 465.

The failure of Williams, as treasurer of the levee board to sign the bond was fatal, making the bond absolutely void. *State v. Martin,* 56 Miss. 108; *Beam v. Parker,* 17 Mass. 591; *City of Sacramento v. Dunlap,* 14 Cal. 421; *Wood v. Washburn,* 2 Pick. 24; *Johnson v. Erkin,* 9 Tex. 1; *Sharpe v. United States,* 4 Watts, 21.

Argued orally by *O. G. Johnson,* for appellant, and by *J. W. Cutrer,* for appellee.

WHITFIELD, C., delivered the opinion of the court.

The facts in this case are as follows: F. I. Williams was duly elected secretary and treasurer of the board of levee commissioners for the Yazoo-Mississippi delta levee district, on the 13th day of March, 1906, and thereafter on the 17th day of May, 1906, the said Williams qualified to act as such treasurer in the following manner, to wit: The said F. I. Williams applied to the Ætna Indemnity Company of Hartford, Conn., to become surety for him on his official bond, which the indemnity company did. The condition of said bond, amongst other things, provided for the faithful performancé and discharge of the duties pertaining to the office of the treasurer. The said indemnity company became surety on the said bond, at the instance of said Williams, and was paid a valuable consideration

by the board of levee commissioners, to wit, the sum of $300 per annum, for which sum the said surety company presented its bill, which bill was duly approved and allowed and regularly paid from the funds belonging to said board of levee commissioners, and the receipt warrant duly filed, and the payment of said sum audited and approved by the said levee commissioners. Said bond was delivered to said Williams, who was both the secretary and the treasurer of the said board, by the Ætna Indemnity Company. The said F. I. Williams failed to sign the bond, but he accepted the same as his official bond, and in compliance with an act of the state legislature, entitled an act to amend an act to incorporate the board of levee commissioners for the Yazoo-Mississippi delta and for other purposes, approved February 28, 1884, and an act to change the domicile of said board and for other purposes, approved January 19, 1886, said Williams filed said bond for record with the clerk of the chancery court of Coahoma county, and after the said bond had been regularly recorded he, as secretary of the said board, received said bond and kept the same in his possession, among other records and papers belonging to said board, until the expiration of his term of office.

The original bill further alleged that by virtue of said bond, which was ratified, accepted, and adopted by himself, he entered upon the discharge of the duties of the treasurer, and received the salary and compensation provided by law, and did not disclose to the board of levee commissioners the fact that his said bond had not been signed by himself; that said bond served as his official bond during his entire term of office, and was recognized and treated as such, by both Williams and the Ætna Indemnity Company, and the board of levee commissioners. The original bill further alleged that the said F. I. Williams deposited the money or funds belonging to said board of levee commissioners with various banking institutions; that the money

was placed to his credit as treasurer of said board; that said banking institutions, with whom the said money was deposited or to whom it was loaned, paid to the said F. I. Williams interest on the public money so deposited; but, while the said Williams accounted to the said board for all moneys paid to him as treasurer by order of the board, he failed, neglected, and refused to account to the levee board for the money paid him as interest or commissions on the public funds. This interest he appropriated to his individual personal use, making no entry of the receipt thereof on the books of account, making no report thereof to the board of levee commissioners, and concealing from the said board the fact that he had received said interest. He never accounted to the board for the interest so received by him, and now fails, neglects, and refuses to pay the sum over to the said board, or in any way to account for the same. These are the allegations of the bill which was demurred to; the demurrer of course admitting all the allegations of fact. The object of this suit was, of course, to compel Williams to pay the board the moneys received by him as interest. To this original bill, Williams and the Ætna Indemnity Company filed separate and distinct demurrers. These demurrers were both submitted to the court below on one hearing, and are to be so considered by this court.

The questions presented for decision by these demurrers are as follows: First, are the matters involved in this allegation properly cognizable by a court of equity? Second, has the said revenue agent a right to maintain this suit, suing for the board of levee commissioners? Third, does the fact that the principal, Williams, failed to sign his official bond, render the instrument void as to the Ætna Indemnity Company, which did sign it? Fourth, if the bond in the case is void, does the chancery court lose its jurisdiction, or has it the power to determine the question as to the liability of the principal, without regard to the

bond? Fifth, is the surety on this official bond liable for interest received on the public funds by the principal, Williams? Sixth, is the treasurer of the levee board required to pay into the treasury money received by him as interest on the funds intrusted to his keeping? We entertain no doubt whatever that under section 161 of the Constitution the chancery court had jurisdiction to try this case; it being a suit on the bond of Williams, a fiduciary and a public officer. Code 1906, § 556, is a rescript of section 161 of the Constitution of 1890. The proposition that the revenue agent is not the proper party to maintain this suit is answered completely by Code 1906, § 4739, in which the duties of the revenue agent are described, and by which it is made the duty of the revenue agent to investigate the accounts of levee board officers and to maintain suits against them. This power has been recognized by this court already. *State v. Hill,* 70 Miss. 106, 11 South. 789.

Turning to one of the propositions now most seriously urged by the appellee to sustain the action of the court below, which sustained the demurrers and dismissed the bill, to wit, that the bond was void because Williams never signed it, we are clearly of the opinion that this contention cannot be maintained successfully under our statutes and decisions. It is to be noted that the surety in this case became such for a valuable consideration, $300 per annum. The case mainly relied on by the appellee is the case of *State v. Marlin,* 56 Miss. 108. The case was decided in 1878 under the Code of 1871. The Code of 1880 materially changed the law regarding liability on official bonds. Section 403 of the Code of 1880 provided the condition of official bonds, and then added that this provision was declaratory only, and that a failure to observe the form therein prescribed should not vitiate any official bond, but that all official bonds should be valid and binding in whatever form they might be taken, whether in the proper penalty

or without any penalty, whether correct or incorrect in their recitals of any kind, whether properly payable or not, and whether approved by the proper officer, or not approved at all, and whether irregular in any other respect whatever, if only such bonds should be delivered as the official bond of the officer and serve as such.   This section expressly provided that such bonds should be obligatory on every one who should subscribe them as such.   This provision was not in the Code of 1871.   Section 403 of the Code of 1880 is section 3463 of the Code of 1906, and was section 3055 of the Code of 1892.   The obvious purpose of the legislature, in the passage of this section of the three Codes of 1880, 1892, and 1906, was to make an official bond binding on all who subscribed it without regard to any irregularity whatever, and whether the instrument should be signed by the principal or not.   This last point, which is conclusive of the contention here, was expressly held in *Gloster v. Harrell,* 77 Miss. 793, 23 South. 520, 941, 27 South. 609. This case is much stronger for appellants than the *Gloster case,* in which also there was a demurrer, because in the *Gloster case* it was admitted that the bond was not signed or adopted by the principal Ratcliff, and that he did not request the sureties to sign it, and that he did not even know that any of the sureties had signed it; whereas, in this case, the allegation, admitted by the demurrer, is that the Ætna Indemnity Company signed at the instance and request of Williams, and that Williams ratified and adopted the bond, and that he, himself for the board, paid the surety $300 per annum.   The fact, therefore, that Williams failed to sign the bond is of no avail to the appellees.

It must be kept in mind that the bond in this case is a joint and several obligation, and this is an answer to several cases cited in brief of learned counsel for appellees; as, for example, *Sacramento v. Dunlap,* 14 Cal. 421, and *People v. Hartley,* 21 Cal. 585, 82 Am. Dec. 758.   The bonds in those two cases were

joint and not several, nor is the statute of California identical at all with our statute. Code 1906, § 3463. The liability of Williams as treasurer was fixed by the law, and was not affected by his failure to subscribe the bond. Under our statutes, the plain purpose of Code 1906, § 3463, was to hold both the principal and the sureties on the official bonds liable without any regard to irregularities whatsoever, if only the bond served as the official bond during the term for which it was given. The purpose of the law was to declare, emphatically, that no official, and no surety on any official bond, should be relieved of liability thereon, provided only that such bond was accepted, and that such bond served as the official bond intended by law. The statute is grounded in the highest possible considerations of justice and right. It is not to be tolerated that Williams, or the surety here, shall come into a court of conscience, when this official bond had served the same purpose precisely that the bond would have served had he signed it, and quibble about liability with the state or the levee board, whose treasurer he was and whose funds he handled. It comes with poor grace from the Ætna Indemnity Company—this technical quibbling—when it knew, or had every reason to know, that the bonds had not been signed by Williams, and when it was scrupulously careful to collect every year its $300 paid to it for its signature to the bond. There was not the slightest obstacle to its ascertaining the fact that Williams had not signed, by the exercise of the very slightest degree of care. We said, in the case of *Gloster v. Harrell,* and we reiterate now, that "it is not for the treasurer or his sureties, the money of the levee board being traced to his hands by competent evidence, to find shelter in the fact that his bond was not approved by resolution; neither he nor they can be heard to make such defense."

Another contention of learned counsel for appellees is that the bond is void because it contains conditions not prescribed by

the statutes.   In other words, because it contains the following conditions: "And it is further provided that the said surety shall not be liable to the obligee by reason of public moneys being now deposited, or hereafter placed or deposited with any bank depository, or depositories; it being the true intent and purpose of this bond to indemnify said obligee from any loss by reason of the personal acts only of said principal to the extent of the penalty of this bond subject to the terms, covenants, and conditions thereof."   But the bond had the proper condition, that said Williams "should properly account for and dispose of the money coming into his hands ·for the Yazoo-Mississippi delta levee board and should faithfully perform all other duties devolving upon him as such treasurer."   The act of 1884 (Laws 1884, c. 168), providing for the creation of the levee board, and fixing the condition of this bond, provided that the treasurer should give bond "conditioned for the prompt and efficient discharge of the duties required by him, to be performed under the provisions of this act for the safekeeping, accounting for and paying over all moneys, property or effects that may come into his custody."   It is perfectly obvious that the condition of the bond as written is a substantial compliance with the condition prescribed above by the said act of 1884.   The bond as executed had the condition the law required, and the addition to the condition of the bond, which we have hereinbefore set out, is mere surplusage.   If the bond contained, as executed, the conditions which the law required, the sureties can neither add to, nor detract from, those conditions by anything they may choose to insert.   The law fixed the liability of the treasurer, and of the sureties, and the law prescribed the exact conditions on which liability should attach, and it is not for the principal nor for the sureties, nor for both, by any evasions or subterfuges or adroit efforts to escape the law, to add anything that should have any effect on the conditions in the bond required by the

law. The law declares all such surplus conditions absolutely void, and this is expressly laid down in the case of *Johnson v. Erskin,* 9 Tex. 1, cited by learned counsel for appellees. This case was decided after the case of *Mays v. Lewis,* 4 Tex. 1, and *Lawton v. State,* 5 Tex. 270. And in addition to all this, the express language of Code 1906, § 3463, ends all controversy along this line. So as the conditions in the bond do not provide for the performance of an act in violation of the law, the form of the conditions is immaterial, provided only the bond served its office as his bond. In the case of *State v. Smith,* 87 Miss. 551, 40 South. 22, we said: "When one signs what purports and is intended to be an official bond, whether as principal, obligee, or surety, the law writes in all necessary recitals. No other interpretation of the statute can subsist without disturbing the whole governmental system and ignoring the plain intendment of the legislative department." We think section 3463 applies to the bond of the levee treasurer as well as to all other official bonds, and it is immaterial as to whom the bond of the treasurer was payable, the state or the levee board. We held that this statute applied to a municipal treasurer, although his bond was payable to a municipality. *Gloster v. Harrell, supra.* There can be no sort of doubt, on any rational view, that this section 3463 of the Code of 1906 does apply to the bond of the treasurer of the levee board, and that such bond is an official bond, within the meaning of that section. See, in this connection, *United States Fidelity Co. v. Union Trust Co.,* 142 Ala. 532, 38 South. 177.

Consider for one moment the preposterousness of the claim of Williams and of his surety. This surety received the $300 per annum every year through Williams himself, as the secretary and treasurer of this board. Williams drew his salary regularly as such treasurer. He exercised full authority and control of the funds of this board which were committed to his charge by

virtue of this bond. In other words, from the beginning to the end of his term of office, he exercised in all respects the same authority and control over these funds, and in all other respects as treasurer, that he could possibly have exercised had he signed the bond, and had it been in absolutely perfect technical harmony with the statutes. He was bound to have known that he had not signed the bond, and, under the facts of this case, this surety company was also bound to have known that this bond had not been signed by Williams. To argue to the contrary is superficial to the last degree, and will not bear analysis.

Williams was both secretary and treasurer of this board. As secretary, he was the lawful custodian of all records, bonds, etc., belonging to said board. At his election, he applied to the Ætna Indemnity Company to become his surety. That company did so for a valuable consideration, and properly executed and delivered to Williams the bond. Upon receipt of this bond, Williams had it filed and recorded by the clerk of the chancery court of Coahoma county. When it was recorded, it was returned to him as secretary of the board, and was held by him until the expiration of his term of office. By authority of this bond, he collected his salary, received and controlled hundreds of thousands of dollars of the people's money, and enjoyed all the privileges of the office. Never once did he indicate to the board that he had failed to sign this bond. In the face of these facts, it is worse than idle for either Williams, or the surety company, to attempt to escape liability on the ground that the bond was not signed by Williams. No such defenses will be tolerated in a court of conscience, on the facts in this record.

Since we hold that the bond was not void, it is, of course, unnecessary to discuss the question whether, if it had been void, and surety released, equity would have had any jurisdiction.

We come now, after disposing of these preliminary matters, to the real point in this case, the soul of the whole controversy,

and that question is: Can Williams and his surety be held for
the interest he received for the use of this money by the bank?
The duty which the law—Act 1884, § 6—put upon Williams
was, amongst other things, "to safely keep, account for and·pay
over all moneys, property or effects that might come into his
custody as treasurer, under that act and by direction of said
board, as said board might require or direct." This obligation
the law wrote into his bond. In addition to the condition just
above recited, it is further provided by section 6 of the act of
1884 (Laws 1884, p. 140, § 6) as follows: "In addition to the
duties herein specifically required of him, it shall be the duty
of the treasurer to receive, safely keep and account for all
moneys required to be paid to, or received by, him, by the pro-
visions of this act, or by the direction of said board; and all
other moneys, property and effects for which he is properly
accountable as such treasurer." We think the necessary intend-
ment of this concluding clause was to hold the treasurer liable
for everything that might come into his hands by virtue of his
office. The act first made him accountable for any money paid to
him by virtue of any act of the legislature. It then made him
accountable for all moneys which might come into his hands in
the usual way, and then, out of abundance of caution, this last
clause was added, providing that he should be liable for all
other moneys for which he, as such treasurer, might be ac-
countable.

The appellees contend that the interest collected by Williams
came into his hands *colore officii,* that he got it as a result of
wrongdoing, and that the surety cannot be held liable therefor,
any more than the surety could be held liable for the act of the
treasurer in robbing a bank or holding up a train. This court
disposed of this contention as applied to the facts in this case
in the following language in *Lewis v. State,* 65 Miss. 468, 4
South. 429: "There has been much quibbling in the books in

behalf of the sureties on official bonds, who are sought to be held responsible for the misconduct of their principals as to whether the act of the officer was done *'colore officii,'* or *'virtute officii.'* While the liability of the surety is not to be extended beyond the terms of his agreement, the public is entitled to some consideration as well as the sponsors of unfaithful public officers, and it must be remembered that if an official, under bond to faithfully discharge the duties of his office, does an act as such officer injurious to the county or to others in regard to a subject over which he has jurisdiction and control, his sureties cannot escape liability for the act, no matter by what technical name it may be called."

In the same case, it is said, at page 472 of 65 Miss., at page 430 of 4 South., speaking of the circuit clerk: "Construed according to its manifest scope and legal import and with reference to the subject-matter to which it relates, the bond was a contract by which Bracy and his sureties covenanted and agreed, in effect, not only that he would faithfully perform the duties enjoined by law, but that he would not, by virtue or under color of his office, commit any legal act to the injury of the county or others. Indemnity to this extent is within the terms of the bond, and the contemplation of the law which required it to be given." Again, in the same case, at page 473 of 65 Miss., at page 430 of 4 South., the following passage is quoted with approval from the case of the *People v. Treadway,* 17 Mich. 480: "If such an officer is to be regarded as acting unofficially whenever he violates his duty, it is not easy to see what object there can be in requiring official bonds. They are not meant to be mere formalities, and they can only be made to secure against the consequences of some sort of misdoings. Their object is to obtain indemnity against the use of an official position for wrong purposes, and that which is done under color of office, and which would obtain no credit except from its appearing to be a regular

official act, is within the protection of the bond and must be made good by those concerned." We think this quotation states the principle, which is the soul of the whole controversy on this subject. Neither the officer nor his sureties can be liable while he has violated no law; and if it is to be held that the mere fact that he has, in his official capacity, violated some law, constitutes the release of the sureties, then the very object for which the bond was given fails, and there had just as well be no bond at all.

The argument here, in large part, is that because section 29 of the acts of 1884, approved February 28, 1884, made it a misdemeanor for any one intrusted with the custody or disposition of any money intrusted to his care by virtue of his office to use such money for his own benefit, therefore the sureties are not liable if the treasurer violates this section, and this contention has two branches: First; that the condition of the bond itself is, as provided by law (Code 1906, § 3463), that official bonds shall be valid except "insofar as they may be conditioned for the performance of acts in violation of the laws of the state;" and, second, "that it never could have been within the contemplation of the sureties that they should become liable for the acts of Williams, the treasurer, which amounted to a violation of any law." So far as the first proposition is concerned, it has no application to the condition of the bond involved. Of course, if there was a condition in the bond providing for the violation of some law, the condition would be utterly illegal, and sureties would not be bound for a violation of such condition. This is not that sort of case. There is no statute prohibiting the treasurer from depositing the funds in a bank, nor was there any statute prohibiting his contracting for interest, provided he had done what he ought to have done, contracted for the interest to be paid to the levee board, which owned the money. The treasurer, in depositing the money in

the bank, deposited it by virtue of his office, under authority of his office, and was fully within the right and law of his office, in so doing. His wrong consisted in abusing that power, by making the interest payable to himself instead of to his principal, whose money he had loaned. The *Renfroe case, infra,*. decided in Georgia, is wholly unlike this case in this respect, on its facts, though we do not desire to be understood as approving the principle of that case in any respect.

As to the second proposition above, that it was not within the contemplation of the sureties in this case that it should become liable for an act of Williams in violation of the law, the answer is that the surety company accepted it with the knowledge of the law as set forth in section 6 and section 29 of the act of 1884 (Laws 1884, p. 140). Section 6 provided that the treasurer should execute a bond "for the faithful performance of the duties of his office, and also conditioned for the prompt and efficient discharge of the duties required of him to be performed under the provisions of this act, and for the safe-keeping, accounting for, and paying over all moneys, property, and effects. that may come into his custody and possession under this act, and by direction of said board, as said board might require; and it contained this further provision: "In addition to the duties herein specifically required of him, it shall be the duty of the treasurer to receive, safely keep and account for all moneys required to be paid to, or received by him, by the provisions of this act, or by the direction of said board; and all other moneys, property and effects for which he is properly accountable as such treasurer." The surety knew, when it signed the bond, that this was the law of the bond, and that Williams was, by the conditions aforesaid last recited, especially required to account for all other moneys for which he was properly accountable as treasurer, and to pay over to the board all moneys required to be paid over by the law. These moneys coming into

his hands were the money and property of the board, and not his money, and the interest, which was a mere accretion on this money, was payable, like the property to which it was an accretion, to the board, whose property the same was. Because thereof, the surety knew of these conditions in the bond, and because these conditions required the treasurer to pay over all increments on the fund to the levee board as well as the principal, this defense is unsound. The act of Williams in depositing the money in the bank was legal, and an act done *"virtute officii,"* the abuse being his applying the interest to his individual use in violation of section 29. The case of *State v. Harney,* 57 Miss. 863, and of *Adams v. Saunders,* 89 Miss. 784, 42 South. 602, are direct authorities in support of this proposition; that the act of Williams in taking this interest for his own use was an illegal act, done, however, by virtue of his office, and an act that could not have been done except by virtue of his office, and because he was such treasurer and handled this vast sum of money. What all the world knew, this court certainly knows, to wit: That the moneys which Mr. Williams deposited in the bank came from and through the levee board whose property the money was.

One of the authorities chiefly relied on by the counsel for the appellees to show that the act of Williams in this case in taking the interest payable to himself was done *colore officii,* but not *virtue officii,* is the case of *State v. Conover,* 28 N. J. Law, 224, 78 Am. Dec. 54, in which it was gravely held that a sheriff, who, having an execution against A., levied upon the property of B., was not thereby guilty of a breach of his official bond, and that his sureties were not liable. Such nonsense as this has long since been exploded by the march of modern jurisprudence. Mr. Freeman, in his note to this case, at pages 64 and 65, states "that the weight of authority clearly shows the contrary proposition" from that laid down in the principal case

to be the law.   There can be no rational doubt, on the allega-
tions of this bill, that this money of the levee board was loaned
by Williams, as treasurer, under and by virtue of his office, and
because he was such officer, and the argument that it was not
so done is wholly unsatisfactory on principle or sound authority.
But the learned counsel for the appellees have two other con-
tentions upon which they earnestly insist: First, "that Wil-
liams was an absolute insurer of all levee board money which
came into his possession or under his control, by virtue of his
office, and therefore was not liable to account to his principal
for this interest."   And second, that the legal title to all moneys
which thus came into his possession vested in him, as an indi-
vidual, and that, being an insurer of such money, the relation-
ship of debtor and creditor immediately arose between him and
the levee board, and therefore he was only legally liable to
account for the exact amount so received by him, and not for
any interest.

The leading authority in support of these views is the case
of the *State v. Walsen,* 17 Colo. 170, 28 Pac. 1119, 15 L. R. A.
456.   Indeed, this is the only case directly in support of these
views.   The states of Indiana, Kentucky, Colorado, and the
territory of New Mexico, in effect, sustain this doctrine, resting
their decisions, however, not on general principle wholly, but
upon their particular statutes.   The Georgia case (*Renfroe v.
Colquitt,* 74 Ga. 618) rested in part upon a special statute, but
may be classed as substantially supporting this view.   All the
authorities along this line are reviewed in the *McFetridge case,*
84 Wis. 473, 54 N. W. 1, 998, 20 L. R. A. 223, and this whole
line of reasoning repudiated as utterly unsound.   The courts of
the states of New York, Ohio, and Wisconsin, and the territory
of Oklahoma, held the direct opposite of the Colorado supreme
court, and, after a most careful examination and comparison
of these conflicting authorities, we announce our approval of the

doctrine of the *McFetridge case,* and our repudiation of the doctrine of the court of Colorado as announced in the *Walsen case.* See *Richmond County Supervisors v. Wandell,* 6 Lans. (N. Y.) 33; *Eshelby v. Cincinnati Board of Education,* 66 Ohio St. 71, 63 N. E. 586; *Thompson v. Territory of Oklahoma,* 10 Okl. 409, 62 Pac. 355; *McFetridge case,* 84 Wis. 473, 54 N. W. 1, 998, 20 L. R. A. 223. And see also specially *United States v. Mosby,* 133 U. S. 273, 10 Sup. Ct. 327, 33 L. Ed. 625, in which the United States supreme court approves the doctrine of the *McFetridge case.* The supreme court of the United States said that the moneys in that case were public moneys, and that any interest on them was an increment belonging to the owner of the funds, the government, and it expressly stated that, whilst the counsel in that case was not required to put the funds out at interest, yet, if in fact he did, the accretion belonged to the government. The supreme court of New York, in the *Wandell case, supra,* said very pertinently: "The notion that a public officer might keep back interest which he has received upon a deposit of public money as a prerequisite of office is an affront to law and morals, and such act is nothing more than an embezzlement." The great underlying principle here is that the interest on this money logically, legally, and necessarily belongs to whoever owns the money. The use of that money earns the interest. The interest is a mere increment to the principal fund, and it is impossible, on any clear thinking in logic, or in law, to escape the conclusion that the interest is necessarily payable to the owner of the principal fund. Whenever, therefore, the question is settled as to who owns the principal fund, all the rest follows without difficulty. Nothing more is necessary to show who is the owner of this fund than a reading of our statutes. Always and everywhere, public money is referred to and treated as the property of the state, or the county, or the levee board, etc., etc. In no just legal sense can it be possible

to say that the treasurer, Williams, was the owner of this money; that he had the legal title to this money in the sense that the money was his absolutely. He is the custodian of the money. He handles the money, he deals with it, but he has the custody, he handles it, deals with it for, and on account of, his principal, the levee board. The money is the money of the levee board. If Williams died, the money did not go to the administrators of his estate as Williams' money. It would pass into the hands of his administrator, temporarily only; but it is made the statutory, legal duty of his administrator to promptly pay over the money to the proper authorities. Code 1906, §§ 3485, 3486. See *Bank v. Fogg,* 80 Miss. 750, 32 South. 285, a case which supports the appellant, not the appellee, and shows that the money is the property of the levee board.

It is a very singular confusion of mind into which some courts have fallen, when they say, as is argued for appellee, that, if an officer is absolutely bound as an insurer, therefore any interest which he receives on the money is his, and not the state's. As well remarked by Judge Newman, quoted in the *McFetridge case:* "Nobody ever heard of the claim that a common carrier, by reason of its absolute liability, became the owner of the goods it carried." And in the main case (84 Wis., at page 517, 54 N. W., at page 11, 20 L. R. A., at page 237) the court says: "While such absolute liability of the treasurer will be assumed, for the purposes of the case, it seems to us that no such conclusion necessarily results therefrom. The treasurer may well be held liable absolutely for all money of the state coming into his hands, and be held liable also for interest on deposits. As stated in another form, such absolute liability does not estop the state to maintain that such interest was received by the treasurer, by virtue of his office, and belongs to his office." And this we think is plainly sound. It is a complete *non sequitur* to say that, because Williams was an absolute

insurer, therefore the interest belonged to him.   The two principles have no relation whatever to each other.   Once settled clearly and definitely whose money the principal sum was, the interest necessarily belongs to that person as an increment to the principal fund, and to argue to the contrary is simply to lose one's self in a metaphysical fog of sophistry, failing to give effect to the central principle of right and justice, making the interest the property of the party who owned the principal sum. As said by the court in the *McFetridge case* again: "It has already been held herein that the public funds were lawfully deposited by Treasurer McFetridge with the banks, and that he lawfully received from such banks compensation by the way of interest for the use of such deposits." Under those circumstances, and in the absence of any statute separating the interest from the funds and diverting it to other uses, such interest was an accretion or increment to the fund, thus becoming a part of it, and logically and necessarily belongs to the owner of the fund, to wit, the state.

It is immaterial that the treasurer stipulated for interest on the deposits, or that the banks paid him such interest, or that both the treasurer and the banks thought he should retain the interest as his own, believing that he was entitled thereto.   Such intention and belief cannot affect the ownership of the interest, or its essential character as a portion of the public funds in the hands of the treasurer.   Notwithstanding such intention and belief, the interest was, in fact, paid to the said treasurer, and belonged to his said office, within the meaning and intention of the bond in suit.   A lawful act cannot be rendered unlawful merely because the actors intended to follow it by an unlawful act.   So when the treasurer lawfully received money, which of right belonged to his office, he receives it by virtue of his office, and cannot, by forming and executing an intention to retain the money as his own, divest the act of receiving the money of

its official character.   It remains that he received it *"virtute officii."*   In the light of these principles, the contentions above referred to by the learned counsel for the appellee all fall to the ground.   In the *Furlong case,* 58 Miss. 717, the act was illegal. The act here of depositing the money was not illegal, and the citation of the *Furlong case* is beside the mark.   In the *Eshelby case, supra,* it was said: "It does not follow from the absolute liability of the treasurer that the funds coming into his hands are his, nor that upon the receipt of money in his official capacity the relation of debtor and creditor is established between himself and the district.   On the contrary, it is quite clear that, instead of being the debtor of the district, he is its treasurer, the custodian of its funds, and that he acquires control of the funds, without acquiring title to them."

Speaking of its own statutes, which for this purpose are just as our own, the court, in the *McFetridge case,* 84 Wis. 473, 54 N. W. 1, 998, 20 L. R. A. 223, says: "From beginning to end, they are entirely inconsistent with the theory that the legislature intended by the enactment of any of them to vest the said treasurer with the legal ownership of the public moneys which come into his hands, thus making him merely the debtor of the state in respect thereto.   If such were his relation to the state, it would be difficult to show that such funds were not subject to be seized for his debts, or, in case of the death of the treasurer in office, that the same would not go to his administrator as part and parcel of his estate; the state being, perhaps, a preferred creditor.   It is inconceivable that any legislature intended such results, and there is nothing in any statute which forces the conclusion that they did so say.   A close analysis of the above statutes, or any extended discussion of them, is quite unnecessary.   A perusal of them is sufficient to carry conviction to the mind that the legislature never intended to divest the state of its title to the public funds, in the hands of its treasurer, and

the consequent control over these funds which results from ownership thereof."

The learned counsel on both sides in this case have filed briefs of signal ability, showing the most exhaustive research. It follows that the court below erred in sustaining the demurrers of the defendant Williams, and the defendant the Ætna Indemnity Company. These decrees are therefore both reversed, both demurrers overruled, and the cause remanded, with leave to answer within thirty days from the filing of the mandate in the court below.

PER CURIAM.    The above is adopted as the opinion of the court.

*Reversed and remanded.*