## ROYAL INDEMNITY CO. v. WOODBURY GRANITE CO.*
### No. 7122.

United States Court of Appeals for the District of Columbia.
Argued Nov. 14, 1938.
Decided Dec. 27, 1938.

---

*Writ of certiorari denied 59 S.Ct. 645, 83 L.Ed. ——.

690

P. J. J. Nicolaides, of Washington, D. C., for appellant.

Woodson P. Houghton, Kahl K. Spriggs, Joseph Fairbanks, Edward Stafford, Louis M. Denit, Thomas S. Jackson, and J. Richard Earle, all of Washington, D. C., for appellees.

Before GRONER, Chief Justice, and MILLER and EDGERTON, Associate Justices.

GRONER, C. J.

This appeal was taken from three judgments entered against appellant in the court below in favor of Woodbury Granite Company, Inc., American Blower Corporation, and Cities Service Oil Company. The judgment of the Oil Company was later settled, and we heard the appeal only as to the former two. The action was brought under the Heard Act[1]—B-W Construction Company, a corporation, entered into a contract with the United States on April 23, 1932, to furnish labor and materials for the remodeling and enlargement of the Post Office in Washington City. Royal Indemnity Company (appellant) on April 27, 1932, executed the bond required by the statute. The work having been done and the contract settled, the use plaintiff, Hudson Supply and Equipment Company, a subcontractor, within the statutory period brought action against the surety to recover for materials furnished, and Woodbury Granite Company and American Blower Corporation intervened.

Woodbury's declaration was filed March 30, 1937, together with an affidavit of merit under the 73rd Rule of the trial court. The affidavit averred that Woodbury entered into a written subcontract with B-W Construction Company whereby it agreed to furnish all of the granite called for by the specifications in the contract between the United States and B-W Company at the rate of $2.50 per cubic foot; that it furnished the granite in accordance with the contract; and that there became due it from B-W Company the sum of

---

[1] 28 Stat. 278, 33 Stat. 811, 36 Stat. 1167, 40 U.S.C. § 270, 40 U.S.C.A. § 270.

$87,368.43, on account of which there had been paid $78,500, leaving a balance due of $8,868.43; and that all of the materials furnished were necessary for and were actually used in the performance of the work required by the contract. On May 11, 1937, appellant filed its pleas and an affidavit of defense under the rule. In the latter it declared, in substance, that the amounts charged for the materials were not the fair and reasonable value, but that the fair and reasonable value did not exceed $50,000 and hence denied it was indebted to Woodbury in any sum. Woodbury on June 11 filed a motion for judgment under the rule for lack of a sufficient affidavit of defense. The motion came on for hearing October 26, 1937, at which time appellant asked leave to file a substituted affidavit in which it sought to incorporate the further ground that at or about the time when Woodbury furnished the materials, it agreed to sell to other contractors material of the same general character for an amount much less than was provided in the contract with B-W Company. The trial court granted the motion for judgment and overruled the motion for leave to file the substituted affidavit. The appeal is from the judgment.

The errors alleged are: first, refusing to allow the substituted affidavit of defense and holding the affidavit filed not sufficient within the meaning of the 73rd Rule; and, second, entering summary judgment while interventions on behalf of other materialmen were pending.

First. For the reasons we shall now state, we think it unnecessary to pass on the question whether the trial court abused its discretion in refusing to accept the supplemental affidavit. For whatever it may be worth, the supplemental affidavit is in the record and in reaching our decision we have treated it as though it had been received and made part of the case. Giving it full effect, we are of opinion it adds nothing of merit or strength to the original affidavit and wholly fails to meet or satisfy the requirements of the rule.

Rule 73 of the trial court provides that if the plaintiff shall file, at the time of bringing his action, an affidavit setting out distinctly his 'cause of action and the sum he claims to be due and shall serve a copy on the defendant together with a copy of the declaration, he shall be entitled to judgment for the amount claimed unless the defendant shall file along with his plea, if in bar, an affidavit of defense denying the right of the plaintiff as to the whole or some specified part of his claim, and specifically stating also, in precise and distinct terms, the grounds of his defense, which must be such as would, if true, be sufficient to defeat the plaintiff's claim. The Supreme Court in Fidelity & Deposit Company v. United States, 187 U.S. 315, 23 S.Ct. 120, 47 L.Ed. 194, sustained the validity and approved the purpose of this rule in a case which, like this, involved a contract of suretyship. We have approved and sustained it in a number of cases, and for more than fifty years it has been a well recognized rule of procedure in the District of Columbia. Central Tire & Accessory Co. v. Koperlik, 61 App.D.C. 142, 58 F.2d 694. The question in this aspect of the case is, therefore, whether the affidavit of the surety was sufficient under the rule.

Woodbury's declaration and claim was filed March 30, 1937. It included in an itemized statement the dates of shipment and contract prices of the granite. The shipments began August 15, 1932, and continued to February 16, 1933. The affidavit of merit filed with the declaration shows that the contract was made in writing May 1, 1932, approximately a week after the date of the main contract; that the materials furnished were necessary for and were actually used in the performance of the work required to be done under the contract; that the contract with the United States was fully completed and performed more than six months before the filing of the suit and within one year of the final settlement; that no suit has been brought by the United States and that the amount claimed is justly due and owing. Under the rule Woodbury was entitled to a summary judgment unless the surety should file with its plea an affidavit of defense "which must be such as would, if true, be sufficient to defeat the plaintiff's claim in whole or in part". Assuming, as we do, the truth of the averments of the affidavits, we think it perfectly clear that they neither singly nor together meet the requirements of the rule. The price charged for the materials was in accordance with the written contract between the general contractor and the claimant. It is not claimed or suggested that the contract was collusive or dishonest or that the parties—the general contractor on the one hand and the materialman on the other—were not dealing at arm's length when it was made.

692

Nor is it suggested in the supplemental affidavit that at the time the contract was made the price agreed to be paid was unreasonable or above the current market price. The first affidavit of defense is a mere conclusion unsupported by any facts. The substituted affidavit has relation only to facts said to exist at the time the materials were supplied... That time was, as we have seen, a period from four to nine months after the making of the contract, and the offer wholly fails to charge—even if that would avail anything—that the market price was the same at both times or that the price asked by Woodbury of others at the later date had even a remote relationship to the market price at the earlier date. In this view, the grounds of defense were obviously insufficient under the rule.

While we are not prepared to say that in every Heard Act case involving a claim under a subcontract the surety is bound by the contract price, we think it may be stated with complete assurance that the surety is so bound except in a case of collusion, fraud, or such overreaching as will shock the conscience. Or, stated otherwise, that the surety is liable in those cases in which the principal would be liable, and this much we said in Fidelity & Deposit Co. v. Smoot, 20 App.D.C. 376. In that case, which involved a bond given to secure performance of a ·District of Columbia public contract, under a statute in all material respects like the Heard Act, we said: "We perceive no reasonable ground whatever, for excepting the surety from the operation of a rule plainly applicable to his principal. * * * Having voluntarily entered into the obligation, he takes it with its burdens, one of which is that. he is charged with the knowledge of his principal." The case went to the Supreme Court and was affirmed in Fidelity & Deposit Co. v. U. S., Use of Smoot, 187 U. S. 315, 23 S.Ct. 120, 47 L.Ed. 194. ·

Appellant relies upon Puget Sound Bridge & Dredging Co. v. Jahn & Bressi, 148 Wash. 37, 268 P. 169; Panama Commercial Co. v. Tingey, 26 Cal.App. 576, 147 P. 585; Utah Construction Co. v. United States, 9 Cir., 15 F.2d 21; and Massachusetts Bonding Co. v. United States, 5 Cir., 88 F.2d 388. The Washington case and the California case appear to rule that the surety is liable to a subcontractor only for the reasonable value of the work performed under the contract, and the conclu-

sion seems to rest on the assumed ground that there is no privity between the materialman and the surety. But this is contrary to the rule under the Federal Act. United States, for Use of Hill v. American Surety Co., 200 U.S. 197, 26 S.Ct. 168, 50 L.Ed. 437. The Washington case rests solely on local authorities, and the California case cites no precedents at all. The two Federal cases cited do not decide the question involved here, and are not in point, and therefore need not be examined in detail. On the other hand, in Burton v. Seifert & Co., 108 Va. 338, 61 S.E. 933, the Court of Appeals of Virginia rejected the contention—in a case brought under the Heard Act—that the surety was liable only for the fair value of the materials furnished, and held that the obligation of the bond was to discharge the liability according to the terms of the contract. This, we think, is the· correct rule, subject only to the exception we have mentioned. The fact that the question apparently never has been raised before in any Federal Court, but that in all similar cases the duty of the surety to respond in accordance with the terms of the contract has been conceded, convinces us—certainly in a case like the present—that the rule we announce is and ought to be the measure of recovery.

Second. The surety, however, insists that, even if the rule applies, the court erred in entering judgment, because there were other interventions on behalf of materialmen and laborers pending and undecided. Stated otherwise, that under the Heard Act not more than one final judgment can be entered in a case. Undoubtedly, the statute contemplates that all claims under the bond are to be presented in a single action and that this action is to proceed as a single case, but in Miller v. American Bonding Co., 257 U.S. 304, 42 S.Ct. 98, 66 L.Ed. 250, and in Arnold v. U. S., for Use of Guimarin & Co., 263 U.S. 427, 44 S.Ct. 144, 68 L.Ed. 371, the Supreme Court said that the several claimants, where there are several, may in the discretion of the trial court have separate trials if there are special and persuasiye reasons for departing from the regular practice. Here under Rule 73 the judgments followed as a necessary consequence of the failure of an adequate defense. That situation supplied the "special" reasons. True enough, if it could be contended here that observance of the rule might prejudice the rights of the sure-

ty or of the other interveners, we should have a different sort of case. But here counsel for the surety and the materialmen have stipulated in writing that the total of all claims of the use plaintiff and of all interveners does not exceed the penalty of the bond. In these circumstances, the allowance of separate final judgments cannot prejudice either the other claimants or the surety. Arnold v. U. S., for Use of Guimarin & Co., supra, which is relied on, contains, we think, nothing to the contrary. In that case the Supreme Court dismissed for lack of jurisdiction, because the decision of the Circuit Court of Appeals did not finally dispose of the subject matter of the litigation either as to parties or cause of action involved. The Supreme Court pointed out that nowhere in the record did it appear that the total amount of the claims filed did not exceed the penalty of the bond and that until that matter was determined the judgment in favor of one of them could not properly be entered for a definite sum. The court said [page 147]:

"In short, this judgment does not determine the ultimate amount which Guimarin & Co. may recover on the bond, the amounts which the intervening creditors may recover, or the amount of the ultimate liability of the defendants on the bond; it adjudicates neither the amount of the claims which are to be finally allowed against the fund created by the bond, nor the proportionate share of each creditor in such fund if inadequate to pay the amounts due all the creditors."

The contrary is true here. The amount due these claimants in this suit is established and fixed. It is not subject to diminution by reason of the interests of other intervening creditors, for, as we have seen, it is agreed the penalty of the bond is ample to meet in full the claims of all. The adjudication as to these claimants is, therefore, final, and their right to have judgment is distinct from the general subject of the litigation. Under these circumstances, and without suggesting any impairment of the rule that the Heard Act contemplates a single action and a single trial, we think the appeal is without merit, and the action of the lower court as to Woodbury is therefore affirmed.

The case of Blower Corporation presents much the same problem disposed of in the case of Woodbury Granite Company. Its intervening petition was filed July 9, 1937. It sets out that the general con-

tractor in the prosecution of the work engaged John F. Le Beau & Company, Inc., as a subcontractor and that Blower Corporation at the request of this subcontractor agreed to furnish certain electric fans and motors necessary in the completion of the main contract; that the equipment was duly supplied and was actually installed in the building in accordance with the specifications and contract; that the agreed price was $10,000 f. o. b. point of shipment and that Blower Corporation prepaid the freight amounting to $240.16, making the total amount of its claim $10,240.16. There was an itemized statement of the particulars of the account and an affidavit of merit under the rule. The affidavit is full and avers not only the making of the contract and the furnishing of the supplies and materials but that they were actually used in the performance of the contract and that appellant on the 24th of August, 1934, had notice of the corporation's claim.

The affidavit of defense which accompanied the surety's plea was filed August 4, 1937, and averred that the surety "has been unable to obtain any knowledge or information sufficient to form a belief as to whether the American Blower Corporation furnished the said John F. Le Beau & Company, Inc. any labor or material which was used in the prosecution of the work covered by said contract between the B-W Construction Company and the United States of America for which the said John F. Le Beau & Company, Inc., has not paid the American Blower Corporation, and has been unable to obtain any knowledge or information sufficient to form a belief of any sum which the said John F. Le Beau & Company, Inc. agreed to pay to the American Blower Corporation which it has not paid, and it has been unable to obtain any knowledge or information sufficient to form a belief of any balance due the American Blower Corporation for any such labor or material, or whether there is any such balance, and it has no knowledge or information sufficient to form a belief as to whether or not the amounts charged in the particulars of demand are fair and reasonable * * * etc."

The following September 2nd, Blower Corporation moved the trial court for judgment on the ground the affidavit failed to state sufficient facts to constitute a defense under Rule 73. On October 26th the surety moved for leave to file an amended affidavit, in which it stated it would show that

the general contractor had paid Le Beau Company in full; that Le Beau Company is no longer in business and the whereabouts of its officers is unknown although effort has been made to locate them; that Le Beau Company's former president is under indictment for irregularities "consisting in part of making false records and representations concerning its subcontracts" growing out of the main contract here in issue. The trial court rejected the offer and entered judgment for the full amount of the claim. The only question is whether the affidavit and the offer to file the supplemental affidavit, giving full consideration to its averments, satisfied the rule.

 The original and the supplemental affidavit, if allowed, are, in our opinion, insufficient. Blower Corporation's claim was described in minute detail in its particulars of demand. The place of installation of the materials furnished was pointed out, and the slightest inspection would have disclosed their presence in the work. It was, therefore, a matter only of hours to verify the fact of furnishing. The materials were shipped the latter part of 1933, and the middle of 1934 the surety then had notice of the amount and character of the claim against the subcontractor. The contract was not completed until two years later. So that, assuming notice was necessary, there was ample time and opportunity to the surety to have ascertained the facts and satisfied itself of the justness of the claim long before it was brought in suit. The trial judge obviously thought that it was not permissible to allow the surety to plead ignorance under the circumstances mentioned, and we see no reason to question his decision in this respect. In neither the original nor in the proposed amended affidavit of defense is there a suggestion of a hope or promise to get at any reasonable time in the future the information which the surety claimed to lack. Nor does the affidavit show any expectation that conditions to this end were likely to arise in the future. All that the surety says—and this, too, notwithstanding it had notice three years before—is that since the filing of the claim it has not succeeded in verifying the account and that conditions are such as to make that well nigh impossible. It does not charge overreaching or fraud or misconduct. In short, the defense is solely that the surety is without information as to the amount due and does not know where to go to get it. This is not

enough. As the Supreme Court said in U. S. Fidelity & Guaranty Co. v. Golden Pressed Brick Co., 191 U.S. 416, 425, 24 S.Ct. 142, 144, 48 L.Ed. 242,—a case where, as here, the surety had made its guaranty for the protection of persons furnishing labor or materials—"The guarantor [surety] is ignorant of the parties with whom his principal may contract, the amount, the nature, and the value of the materials required, as well as the time when payment for them will become due. These particulars it would probably be impossible even for the principal to furnish, and it is to be assumed that the surety contracts with knowledge of this fact. * * * If a person deliberately contracts for an uncertain liability, he ought not to complain when that uncertainty becomes certain." And to this we may add what we said in Fidelity & Deposit Co. v. Smoot, 20 App. D.C. 376, that the surety who voluntarily enters into an obligation under the Act, though he may have no actual personal knowledge of the state of the account between his principal and the creditor, is yet liable like his principal. Having entered into the obligation, he takes it with its burdens, and consequently must deny the justice of the demand under oath or become liable, like his principal, to summary judgment. See also U. S., for Use of Hill v. American Surety Co., 200 U.S. 197, 205, 26 S.Ct. 168, 50 L.Ed. 437, Mankin v. United States, 215 U.S. 533, 30 S.Ct. 174, 54 L.Ed. 315; Illinois Surety Co. v. John Davis Co., 244 U.S. 376, 37 S.Ct. 614, 61 L.Ed. 1206.

 The trial court allowed interest on the claim from August 24, 1934. This, we think, was error. The question of liability for interest on a claim of this nature was settled by us in London & L. Indemnity Co. v. Smoot, 52 App.D.C. 378, 287 F. 952. There we held that the surety's liability for interest began only when a demand for payment was made. Without demand, interest runs only from the date of filing a claim. Blower Corporation's affidavit states: "that the said defendant, Royal Indemnity Company has heretofore, on, to wit, the 24th day of August, 1934, and at other times, had notice of the claim of this intervener." This, we think, is not sufficient to show demand. What we have said as to the duty of the surety to make investigation does not include the initiative to pay the claim. It stands only as security and when the claimant makes actual demand, interest begins to run. United States v. United States Fidelity & Guaranty Co.,

236 U.S. 512, 530, 531, 35 S.Ct. 298, 59 L. Ed. 696. Since Blower Corporation's affidavit fails to show *demand*, interest did not begin to run until action on contract was brought.

The judgment in each case will be affirmed with interest from the date of the filing of the respective claims in suit.

Affirmed in part; reversed in part; and remanded.