## CUNNINGHAM v. CUNNINGHAM et al.

### No. 9355.

United States Court of Appeals District of Columbia.

Argued Oct. 7, 1946.

Decided Nov. 4, 1946.

Mr. Richard E. Wellford, of Washington, D. C., for appellant.

Mr. Thomas S. Jackson, of Washington, D. C., with whom Messrs. Louis M. Denit,

A. Leckie Cox and Coleman L. Diamond, all of Washington, D. C., were on the. brief, for appellees.

Before GRONER, Chief Justice, and WILBUR K. MILLER and PRETTY-MAN, Associate Justices.

WILBUR K. MILLER, Associate Justice.

This appeal requires us to say whether a surety, which has paid the full penalty of its undertaking, can be charged with interest from a date prior to the assertion of the claim against it; whether an apprehensive surety, by filing a petition for relief because its principal was not rendering proper accounts, waived the demand for payment which is necessary to start interest running against a surety.

In 1925 Charles Cunningham was adjudged mentally incompetent by the District Court of the United States for the District of Columbia. He owned real estate in Philadelphia and Kentucky, had certain personal property, and was entitled to receive from the Navy Department disability pay which varied somewhat through succeeding years, but usually was the sum of $73.30 per month. Immediately after the adjudication of insanity, Betty Cunningham, a sister of the incompetent, was appointed his committee. She executed bond in the penal sum of $2,500 with United States Fidelity and Guaranty Company as surety, took possession of her brother's estate and at once began to receive the monthly payments due him because of his disability.

The first annual account of Betty Cunningham as committee disclosed by the record was filed May 25, 1932. It was unsatisfactory. The Auditor of the District Court, to whom such documents are referred, complained that she had furnished information so meager that he could not submit a final report; he recommended on October 18, 1934, that Betty Cunningham be ruled to show cause why she should not be removed as committee for failing to comply with Equity Rule 69. The record is silent as to why the Auditor's suggestion was not followed. Thereafter the case

languished on the District Court's docket, apparently without attention from or action by anybody, while the committee continued to collect compensation from the Navy.

The writing of another chapter was begun on May 28, 1937, when United States Fidelity and Guaranty Company filed a petition for relief as surety. It set forth the difficulty experienced by the Auditor, disclosed by his 1934 report; it pleaded its own unsuccessful efforts subsequently made to cause the committee to render a full accounting, showed that the committee was still receiving $73.30 per month from the Navy, and expressed apprehension of loss because of its suretyship. The surety's prayer was that Betty Cunningham be required to make a complete account, to give counter-security or an entirely new bond and, failing that, that she be removed. An injunction was sought to prevent further monthly payments to the committee by the Navy. Upon the filing of this petition a show cause order was entered against Betty Cunningham and the government officials who controlled the disability payments, but no further action was ever taken by the District Court with respect to the proceeding initiated by the surety's petition. Although not under the court's compulsion, the Navy made no more disability disbursements to Betty Cunningham after April 1937.

The reproachful record is, therefore, that for 12 years the committee collected sums which aggregated a substantial amount without giving anything like an adequate accounting of her stewardship, and without protest, except the ineffectual suggestion of removal made by the Auditor in 1934, until the surety's cry of alarm in 1937. Then, strangely enough, the case lay quiescent from 1937 until February, 1943, when the clerk of the District Court filed a memorandum pointing out that Betty Cunningham's report and account under Court Rule 22, due not later than January 7, 1943, had not been filed. On the same day she was notified that her delinquency would be called to the attention of the court on March 2, 1943. This was the spark which set off the charge that had smouldered so long.

On March 12, 1943, the District Court removed Betty Cunningham as committee and appointed a guardian ad litem for the incompetent. A comprehensive report promptly filed by the guardian showed the committee's failure to account for the moneys which had come into her hands and recommended that a successor committee be appointed so that immediate action might be taken "to recover and preserve the assets rightfully belonging to the estate." The successor, who was at once appointed, died a few months later without having taken action, and on March 9, 1944, Jeffords, the present committee, was appointed. Although the order of March 12, 1943, which removed Betty Cunningham, also referred the matter to the Auditor for a complete statement of her accounts, it was not until December 27, 1945, that a report was filed pursuant to that reference. The report showed that as of May 1, 1937, Betty Cunningham had failed to account for $9,208.69.

This report of the Auditor was confirmed on February 4, 1946, and on February 27, 1946, the successor committee acted. He moved for judgment against Betty Cunningham for $9,208.69, with interest from May 1, 1937, and for the further sum of $353.50 as court costs. He also moved for judgment against United States Fidelity and Guaranty Company, the surety, for $2,500, the full penalty of its undertaking, with interest from May 28, 1937, "the day it filed its petition herein admitting knowledge of Betty Cunningham's default and praying to be relieved from further liability as surety." Thereupon, the District Court awarded judgment as prayed for against Betty Cunningham; and against the surety for $2,500, with interest from February 27, 1946, the date on which the motion for judgment was filed. From so much of the judgment as allowed interest against the surety only from February 27, 1946, the present committee appeals.

 The principle that a surety cannot be held, because of the default of his principal, in an amount greater than the penal sum of the bond, is statutorily affirmed in this jurisdiction by Title 28, § 2405, District of Columbia Code 1940.

Nevertheless, interest in excess of the maximum penalty of the undertaking may become due from the surety, but only because of the surety's own default. Nothing is due from the surety until he is notified of his principal's delinquency; if he then unjustly withholds payment, he is liable for interest because of his unjustifiable detention of the money.[1] He is not required to take the initiative in making payment, and stands only as security until a claimant makes actual demand; then only does interest begin to accrue.[2]

When, on May 28, 1937, the surety petitioned for relief, it manifested knowledge of Betty Cunningham's failure to file proper accounts, but it did not thereby waive the demand for payment which creates the obligation to pay and the consequent liability for interest. No actual demand was made until the present committee moved for judgment on February 27, 1946. Consequently the District Court was correct in awarding interest only from that day.

Affirmed.

---

[1] United States v. United States Fidelity & Guaranty Co., 236 U.S. 512, 530, 35 S.Ct. 298, 59 L.Ed. 696; Massachusetts Bonding & Insurance Co. v. United States, 9 Cir., 97 F.2d 879; Maryland Casualty Co. v. United States, 5 Cir., 76 F.2d 626; In re J. R. Palmenberg Sons, Inc., 2 Cir., 76 F.2d 935; London & Lancashire Indemnity Co. v. Smoot, 52 App.D.C. 378, 287 F. 952; Royal Indemnity Co. v. Woodbury Granite Co., 69 App.D.C. 364, 101 F.2d 689.

[2] London & Lancashire Indemnity Co. v. Smoot, supra; Royal Indemnity Co. v. Woodbury Granite Co., supra.