304 F.2d 753
 GOLDEN WEST CONSTRUCTION COMPANY, a corporation, and General
Insurance Company of America, a corporation, Appellants,
v.
UNITED STATES of America for the Use and Benefit of George
BERNADOT, d/b/a George W. Bernadot, Red-E-Mix Concrete
Company; and Joseph Campbell, Comptroller General of the
United States of America, Appellees.
 No. 6780.
 United States Court of Appeals Tenth Circuit.
 May 31, 1962, Rehearing Denied July 2, 1962.
 
 Richard I. Singer, San Diego, Cal. (William J. Cayias, Salt Lake City, Utah, Ben B. Rubin, Norman T. Seltzer, Herbert J. Solomon, San Diego, Cal., and D. Eugene Livingston, Salt Lake City, Utah, on brief), for appellants.
 Max K. Mangum, Salt Lake City, Utah (H. Arnold Rich and Leonard W. Elton, Salt Lake City, Utah, on brief), for appellees.
 Before MURRAH, Chief Judge, and BREITENSTEIN and HILL, Circuit Judges.
 MURRAH, Chief Judge.
 
 
 1
 By this appeal Golden West Construction Company and its surety, Gneral Insurance Company of America, attack a judgment in a Miller Act (40 U.S.C.A. 270a et seq.) case for the reasonable value of labor and materials furnished by appellee-Bernadot in connection with the construction by Golden West of government radar stations in Utah.
 
 
 2
 Shortly after Bernadot began work under its subcontract with Golden West, a new agreement was orally entered into between the parties which the jury, by special interrogatory, found to require Golden West to take over and perform the sub-contract; pay Bernadot's outstanding obligations incurred in connection with the sob-contract; reimburse Bernadot a reasonably amount, to be determined at a later date, for the use of equipment left on the job site by Bernadot. Judgment was entered in the amount stipulated by the parties as reasonable in the event the issues were resolved in favor of Bernadot.
 
 
 3
 Appellants contend that Bernadot's suit was not commenced within the limitation period prescribed by the Miller Act; that the trial court erred in the admission and exclusion of evidence; that General Insurance Company was relieved from its surety liability by reason of the substitution of a new agreement between Golden West and Bernadot; and that the trial court erroneously allowed interest against General Instuance Company prior to its notice of Golden Wests' default.
 
 
 4
 The timeliness of Bernadot's suit is governed by 40 U.S.C. 270b, which, prior to amendment in 1959, provide that 'miller Act' claims must be commenced within one year of the 'final settlement' date of the general contract under which the obligation sued upon arose.[1] At that time, section 270c provided that the date certified by the Comptroller General of the United States as the 'final settlement' date '* * * shall be conclusive as to such date upon the parties.'[2] The parties agree that this suit was commenced within one year from the date certified by the Comptroller General. Appellants contend, however, that the Comptroller General's certificate is reviewable for fraud or bad faith and assert that the determination of the final settlement date was so erroneous as to imply bad faith. And see Peerless Casualty Company et al. v. United States for Use and Benefit of Bangor Roofing and Sheet Metal Company (1 C.A.), 241 F.2d 811; United States of America for Use of Soda v. Montgomery et al. (U.S.D.C.M.D.Pa.), 170 F.Supp. 433; 269 F.2d 752 (3 C.A.).
 
 
 5
 Assuming that the certification by the Comptroller General under the pre-amended statute was reviewable in the manner suggested, the trial court specifically found that there was '* * * no evidence of bad faith or fraud in conncetion with the certification of the Comptroller General of the United States' and that the certification is supported by 'substantial evidence.' We agree with the trial court. The record shows that the Comptroller General had, prior to his certification, information in the form of letters indicating that work had been completed and accepted by January 16, 1959; that an Equalization Order had been entered on March 20, 1959, making final account for all unfinished items on the contract; and that the final balance due on the contract had been determined as of the date of the Equalization Order. The Order itself however, states that some of the work had not been completed as of the date of its entry, and it was estimated that another 60 days would be required. And, the record further shows that changes in the contracted work made pursuant to the Equalization Order were not accepted by the United States until April 15, 1959-- the date certified by the Comptroller General as the 'final settlement' date. We accordingly hold that Bernadot's suit was timely filed.
 
 
 6
 During the course of the trial, a letter from Bernadot's attorney to M. L. Lawrence, an officer of Golden West, containing Bernadot's version of the oral agreement, was introduced into evidence over appellants' objection. Prior to receiving the exhibit, the trial court asked whether the addressee of the letter would testify, and counsel for appellants assured the court that he would. Indeed, Mr. Lawrence, the addressee, admitted on direct examination that he had received the letter and he was cross-examined as to the accuracy of its contents. But appellants contend that the letter was a self-serving declaration and that Golden West's failure to respond thereto improperly imputed an implied admission on its part that the letter had accurately reported the terms of the oral agreement. It is, of course, settled law that one may not make his case by pulling on his own evidentiary bootstraps. See Leach & Company, Inc. v. Pierson, 275 U.S. 120, 48 S.Ct. 57, 72 L.Ed. 194; Farris v. Sturner (10 C.A.), 264 F.2d 537. But this does not mean that all writings with self-serving propensities are, ipso facto, inadmissible. In this instance, the parties had orally abrogated a written contract and the substituted parol agreement was incomplete. Important matters were left for future negotiations and the evidence indicates that further communications were contemplated. The subject letter was written by appellee's counsel, who was present during the oral negotiations, and understandably sets forth appellee's version of the events leading to the cancellation of the written agreement as well as the terms and conditions of the new agreement. It was, to be sure, designed to advocate the interest of the appellee and, to that end, it was argumentative as well as expository. But it did purport to perpetuate the oral understanding of the parties and it invited close scrutiny and corrections of 'any inaccuracies.' It was not admitted as the 'written agreement' of the parties. Rather, it was admitted under careful instructions to the effect that it might be considered by the jury as some evidence of the oral agreement between the parties. And we think it was admissible for that purpose.
 
 
 7
 Appellants next contend that General Insurance Company was relieved from any and all liability on its payment bond because the oral change in the contractual relationship between Bernadot and Golden West was prejudicial to its interest and negotiated without its knowledge or consent. Generally, a surety company is discharged from liability under its payment bond when a material change between the principal and the sub-contractor, without the consent of the surety, results in prejudice to the surety's interest. See American Bonding Co. of Baltimore et al. v. United States to Use of Francini et al. (3 C.A.), 233 F. 364; Piel Construction Co. v. Commonwealth of Pennsylvania to Use of Hendricks (3 C.A.), 35 F.2d 265; National Surety Co. v. Lincoln County, Mont. (9 C.A.), 238 F. 705; Bank of Eng., Ark. v. Maryland Casualty Co. (D.C.E.D.Ark.), 293 F. 783; Pickens County v. National Surety Co. (4 C.A.), 13 F.2d 758; United States v. Quaker Industrial Alcohol Corp. (D.C.E.D.Pa.), 2 F.Supp. 863, 866-867; American Auto Insurance Co. v. United States for Use and Benefit of Luce (1 C.A.), 269 F.2d 406. But 'Technical rules otherwise protecting sureties from liability have never been applied in proceedings under this statute' or its predecessor, the Heard Act (28 Stat. 278, and 33 Stat. 811). See Illinois Surety Co. v. John Davis Co., 244 U.S. 376, 380, 37 S.Ct. 614, 61 L.Ed. 1206; Fleisher Engineering & Construction Co. v. United States for Use and Benefit of Hallenbeck, 311 U.S. 15, 61 S.Ct. 81, 85 L.Ed. 12; Fanderlik-Locke Co. v. United States (10 C.A.), 285 F.2d 939, and cases there cited. 'The purpose of the Miller Act is to provide security for those who furnish labor and material in the performance of government contracts, and a liberal construction should be given the Act to accomplish this purpose.' Fanderlik-Locke Co. v. United States, supra, at p. 942, and cases there cited.
 
 
 8
 Whatever may be said of the application of the general rule as between the principal on the payment bond and the surety, it may be doubted whether it should be applied to prevent recovery by the supplier of labor and material for whose benefit the statutory bond was executed. We entertain some doubt whether the supplier should be required to obtain the permission of the surety before enlarging or altering his original sub-contract at the risk of forfeiting his statutory protection. But we have no occasion to resolve the doubt here for the issue of prejudice to the surety was presented to the trial court for determination, and the court specifically found that the insolvency of Golden West was the result of its own proor management, and that General Insurance Company had not in any way been prejudiced by the change in the contractual relationship between Golden West and Bernadot. These findings are substantiated by the record and, not being clearly erroneous, are dispositive of General Insurance Company's claimed release from liability.
 
 
 9
 Appellants also complain of the trial court's exclusion of evidence relating to a claim made against General Insurance Company by another of Golden West's sub-contractors. They reason that such a claim was a contingent liability on the part of General Insurance Company and that it demonstrated the prejudice resulting from Golden West's insolvency. But the claim of this third party was not proof that the modification of the agreement between Golden West and Bernadot had caused the latter's financial difficulties. And, absent such proof, any claims against General Insurance Company other than that of Bernadot were entirely immaterial.
 
 
 10
 Finally, appellants urge that the trial court erred in allowing interest prior to the date of the commencement of the suit for the reason that demand for payment on the bond is prerequisite to liability for interest, and there is no proof of any demand prior to suit. The applicable Utah law is 'that the right to interst is not to be determined by whether the damages are liquidated or unliquidated, 'but whether the injury and consequent damages are complete'.' Wunderlich Contracting Co. v. United States (10 C.A.), 240 F.2d 201, 206, and cases there cited. Here, the injury and consequent damage was complete when Bernadot had furnished the material, equipment had labor, and Golden West had defaulted on the payment therefor. And the trial court's uncontested findings were that Bernadot had furnished these items between the dates July 21, 1958 and September 30, 1958, and that Bernadot had not been paid anything. Clearly, an award against Golden West, whose breach had occasioned the damage, for the amount due plus interest from September 1958 would be proper. But there is a distinction between interest claimed as part of the principal's obligation to account, and interest charged against the surety as damages for failure to make good the default of his principal. See Annot. 57 A.L.R.2d 1317. Our question is whether notice was a prerequisite to its surety liability for interest on the debt. For even though Bernadot's statutory cause of action is coextensive with the terms of the bond requiring, in essence, that the surety indemnify all suppliers wao were not 'promptly' paid by the general contractor, we do not understand these terms to constitute a waiver of what appears to be the prevailing rule requiring a demand for payment upon the surety in order to activate interest liability. See American Auto Insurance Co. v. United States (1 C.A.), 269 F.2d 406; United States for Use of Baltimore Cooperage Co. v. McCay (D.C.Md.), 28 F.2d 777, 781; United States for Use and Benefit of Caldwell Foundry and Machine Co. v. Texas Construction Co. (5 C.A.), 237 F.2d 705; Royal Indemnity Co. v. Woodbury Granite Co., 69 App.D.C. 364, 101 F.2d 689, cert. granted 306 U.S. 627, 59 S.Ct. 645, 83 L.Ed. 1030, cert. dismissed, 308 U.S. 628, 60 S.Ct. 63, 84 L.Ed. 524; United States for Use of John Davis Co. v. Illinois Surety Co. (7 C.A.), 226 F. 653, affirmed 244 U.S. 376, 37 S.Ct. 614, 61 L.Ed. 1206; United States to Use of Forsberg v. Fleischmann Construction Co., D.C., 298 F. 320, affirmed 4 Cir. 298 F. 330, affirmed 270, U.S. 349,46 S.Ct. 284, 70 L.Ed. 624; United States v. United States Fidelity & Guaranty Co., 236 U.S. 512, 35 S.Ct. 298, 59 L.Ed. 696; London & Lancashire Indemnity Co. of America v. Smoot, 52 App.D.C. 378, 287 F. 952; United States v. Quinn (2 C.A.), 122 F. 65; United States to Use of J. E. Sadler & Co. v. W. H. French Dredging & Wrecking Co. (D.C.Del.), 52 F.2d 235; United States for Use and Benefit of Farwell, etc. v. Shea-Adamson Co. (D.C.Minn.),21 F.Supp. 831, 838; United States for Use and Benefit of Belmont v. Mittry Bros. Construction Co. (D.C.Idaho), 4 F.Supp. 216. And since we find no definitive statement on this limited issue within the body of the law of Utah, we assume that its courts would follow this general rule. Accordingly, we hold that interest against General Insurance Company should not have been allowed prior to the institution of the suit-- the first record proof of any demand for payment made upon it.
 
 
 11
 Appellee argues, however, that even if interest could only be awarded from the date of the earliest demand by Bernadot upon the surety, a finding by the trial court should be implied in accord with the judgment awarding interest from September 29, 1958-- i.e., a finding that a demand on the surety was made on that date. And, appellee relies upon the cases of Mourikas v. Vardianos (4 C.A.), 169 F.2d 53; and Hinshaw v. New England Mut. Life Insurance Co. (8 C.A.), 104 F.2d 45, to support this proposition. But though we have recognized and applied the presumption contended for by appellee, we did so only in a case, like those cited by appellee, where there was evidence to support the presumed finding. See Aetna Insurance Co. v. Rhodes (10 C.A.), 170 F.2d 111. In this case there is no evidence from which the trial court might have found any demand by Bernadot upon General Insurance Company prior to the date of the institution of the suit, and we may not presume a finding which is unsupported by any evidence.
 
 
 12
 The judgment is modified to award interest on the judgment against General Insurance Company from the date of suit and, as modified, is affirmed.
 
 
 
 [1]
 The 1959 amendment to 270b provided that the one year limitation period would run from 'the day on which the last of the labor was performed or material supplied * * *' rather than the date of the 'final settlement' of the contract
 
 
 [2]
 Contemporaneously with the 1959 amendment of 270b, subsection 270c of that statute was amended by deleting its provisions relating to the 'final settlement' of the contract and the 'conclusiveness' of the Comptroller General's certificate thereof