INZER, Justice:
After careful consideration of the suggestion of error filed by the State, its brief in support thereof, and the answer of appellees and their brief, a majority of the Justices have reached the conclusion that the suggestion of error is well taken and should be sustained. Therefore, the former opinion of this Court wherein we affirmed the decree of the trial court is withdrawn, and the following is substituted therefor.
Appellant, State of Mississippi, upon the relation of its . Attorney General and Auditor for the use and benefit of Pearl River County, brought suit in the Chancery Court of Pearl River County against Willie Estus Moody, and Tri-State Insurance Company and Employers Mutual Casualty Company, sureties upon his official bonds, seeking to recover funds of the county which Moody wrongfully misappropriated or converted to his own use.
Moody was elected as a member of the board of supervisors for the Fourth District of Pearl River County, and before taking office on January 2, 1956, he executed a public official’s bond with TriState Insurance Company as surety. The bond stated the penalty thereof to be $12,000. During the term of 1956-1960 Moody converted to his own use $6,931 from the county road funds.
In 1959 Moody was reelected to the same office. Before entering the new term of office he executed a new official bond with Employers Mutual Casualty Company as surety, with the stated penalty being $12,-000. During the 1960-1964 term Moody converted to his own use $33,457.50 from the county road funds.
A decree was entered in the trial court wherein judgment was awarded against Moody and Tri-State Insurance Company as surety upon Moody’s bond for the term 1956-1960 for $6,931, the full amount of the funds misappropriated during that term, plus interest, as to Moody, from the date of each misappropriation, and as against Tri-State, from May 25, 1964, the date on which demand was made upon it by the State Auditor, under the provisions of Mississippi Code 1942 Annotated section 3877-05(6) (Supp.1966). The penalty of the bond executed by Tri-State Insurance Company was sufficient to cover this award.
The decree also awarded a judgment against Moody individually for $33,457.50, with interest thereon from the date of each misappropriation, and against Moody and Employers Mutual Casualty Company, surety upon Moody’s bond for the term 1960-1964, for $12,000 of it, the penalty prescribed in its bond, awarding interest on the latter sum against the surety from May 25, 1964, the date of the State Auditor’s demand.
From this decree the State of Mississippi for the use and benefit of the county has appealed, assigning as error (1) failure of the trial court to award interest against the sureties from the respective dates of each conversion or misappropriation, and (2) in the case of Employers Mutual Casualty Company, to hold under provisions of Mississippi Code 1942 Annotated section 4033 (1956) that the penalty of its bond, for which it actually became liable upon executing and filing the bond, was “the full penalty of the bond which might have been required,” which was five percentum of the sum of all of the state and county taxes *588 shown by the assessment rolls and levies to have been collectible in Pearl River County for the year 1959, the year preceding the beginning of Moody’s second term of office.
The second assignment of error involves the application and construction of two statutes. Mississippi Code 1942 Annotated section 2872 (1956) provides:
Each member of the board of supervisors, before entering upon the duties of his office, shall execute a bond with sufficient sureties, * * * conditioned, and approved as bonds of county officers are required to be, in a penalty equal to five percentum of the sum of all the state and county taxes shown by the assessment rolls and the levies to have been collectible in the county for the year immediately preceding the commencement of the term of office of said member; * * *.
It is clear that this section requires that a member of the board of supervisors, before entering into the duties of his office, must enter into bond with the penalty equal to five percentum of the sum of all the state and county taxes shown by the assessment rolls and the levies to have been collectible in the county for the year immediately preceding the commencement of the term of office of the member. Thus, in the case of Moody, the statute required him to enter into bond with the required penalty before entering on his term of office. The proof shows that five percentum of the sum of all state and county taxes shown by the assessment rolls and levies to have been collectible in the year preceding Moody’s taking office for the 1960— 1964 term would have required a bond in the amount of $33,985. Instead of complying with the law, Moody entered into a bond with Employers Mutual Casualty Company as surety with the stated penalty of $12,000, and this bond was filed and approved as his official bond.
Mississippi Code 1942 Annotated section 4033 (1956) provides:
The bonds of all officers required to give bond shall be conditioned in the following form, to wit:
“Whereas, the above bound A B was duly elected (or appointed) to the office of . . ., on the day of . . . for the term of . years from the . . . day of . .; therefore, if he shall faithfully perform all the duties of said office during his continuance therein, then the above obligation to be void.”
But a failure to observe the form herein prescribed shall not vitiate any official bond; and all official bonds shall be valid and binding in whatever form they may be taken, except so far as they may be conditioned for the performance of acts in violation of the laws or policy of the state; and whether in the proper penalty or without any penalty, or whether correct or incorrect in its recitals as to the term of office or otherwise, or whether properly payable, or whether approved by the proper office or not approved by any, or if irregular in any other respect, such bond, if delivered as the official bond of the officer, and serving as such, shall be obligatory on every one who subscribed it for the purpose of making the official bond of such officer to the full penalty, or, if it has no penalty, to the full penalty of the bond which might have been required.
It is contended by the State that although the penalty specified in the bond by Employers Mutual Casualty Company was $12,000, the principal and surety were actually bound by virtue of the foregoing section to the full penalty of the bond which might have been required. In other words, it is contended that the statute writes into an official bond the amount required by law, whether the amount is recited therein or not, and the principal and his surety in this case could not limit the bond to an amount less than that required by law. We think that a proper interpretation of the foregoing' section supports this contention.
*589 It should be observed that section 4033 was first enacted by the Legislature in 1880, and it appeared as section 403 of the Code of 1880. In the case of Adams v. Williams, 97 Miss. 113, 52 So. 865, 30 L.R.A.,N.S., 855 (1910), in discussing the statute, this Court said:
The Revised Code of 1880 materially changed the law regarding liability on official bonds. Section 403 of the Revised Code of 1880 provided the condition of official bonds, and then added that this provision was declaratory only, and that a failure to observe the form therein prescribed should not vitiate any official bond, but that all official bonds should be valid and binding in whatever form they might be taken, whether in the proper penalty or without any penalty, whether correct or incorrect in their recitals of any kind, whether properly payable or not, and whether approved by the proper officer, or not approved at all, and whether irregular in any other respect whatever, if only such bonds should be delivered as the official bond of the officer and serve as such. This section expressly provided that such bonds should be obligatory on every one who should subscribe them as such. This provision was not in the Code of 1871. Section 403 of the Code of 1880 is section 3463 of the Code of 1906, and was section 3055 of the Code of 1892. The obvious purpose of the legislature, in the passage of this section of the three Codes of 1880, 1892, and 1906, was to make an official bond binding on all who subscribed it without regard to any irregularity whatever, and whether the instrument should be signed by the principal or not. (97 Miss, at 132-133, 52 So. at 867)
The Court also said:
Under our statutes, the plain purpose of section 3463 in the Code of 1906, was to hold both the principal and the sureties on the official bonds liable without any regard to irregularities whatsoever, if only the bond served as the official bond during the term for which it was given. The purpose of the law was to declare, emphatically, that no official, and no surety on any official bond, should be relieved of liability thereon, provided only that such bond was accepted, and that such bond served as the official bond intended by law. The statute is grounded in the highest possible considerations of justice and right. (97 Miss, at 134, 52 So. at 868)
In discussing the question of whether the principal and surety could vary the conditions of an official bond from those required by statute, the Court said:
And in addition to all this, the express language of the section 3463 of the Code of 1906, ends all controversy along this line. So as the conditions in the bond do not provide for the performance of an act in violation of the law, the form of the conditions is immaterial, provided only the bond served its office as his bond. In the case of State v. Smith, 87 Miss. 551, 40 South. 22, we said: “When one signs what purports and is intended to be an official bond, whether as principal, obligee, or surety, the law writes in all necessary recitals. No other interpretation of the statute can subsist without disturbing the whole governmental system and ignoring the plain in-tendment of the Legislative Department.” (97 Miss, at 136, 52 So. at 868-869)
The case of State v. Smith, decided in 1905, cited in the foregoing paragraph, involved the question of whether the state could successfully challenge the right of a member of the board of supervisors to hold office by quo warranto proceedings when such officer had filed an official bond wherein the penalty was less than five percentum of the sum of all state and county taxes shown by the assessment rolls and the levies to have been collectible in the county for the year immediately preceding the commencement of his term of office. This Court, in passing upon this question, construed section 3055 of the *590 Code of 1892, which was in the exact language of our present Code section 4033, and held that although the supervisor in that case had filed a bond which provided for a penalty less than the amount required by statute, the principal and surety by signing the official bond became liable for the full penalty that law required. In construing the statute the Court said:
All official bonds are governed by section 3055, Rev.Code 1892. That section provides that a failure to observe or comply with any formality shall not vitiate any official bond, but all such bonds shall be valid and binding; and this, too, whether the bond is made in the proper penalty, or without any penalty, or whether correct or incorrect in any of its recitals. It was the intent of the Legislature, in our judgment, that when sureties sign any official bond, whether an incorrect penalty be inserted, or no penalty at all, by such signing they become obligated “to the full penalty of the bond which might have been required.” Under this view it becomes immaterial whether the proper officer, judicially determining the amount of the penalty which ought to be inserted. in bonds for members of boards of supervisors, under Rev.Code 1892, § 275, makes a correct calculation or not, because by operation of law, upon the signing and approval of the bond, the state is protected to the full extent of whatever the legal penalty should be. One who enters into office, and the sureties on his official bond by virtue of which he enjoys the office, are alike estopped to deny the validity of the bond executed by them, and this estoppel applies as well to the amount of the penalty as to any other misrecital in the obligation. (87 Miss, at 557, 40 So. at 24)
So there could be no doubt relative to its construction of this statute, the Court then said:
If a person elected fails to give any official bond, or fails to have the official bond which he does give approved by the proper officer, he cannot lawfully be inducted into office; but if he honestly undertakes to comply with the law, and gives the bond which he is directed by the proper 'officer is the correct bond, with proper sureties, and that bond is approved, and he otherwise qualifies, he is protected in the enjoyment of his office, and the state is protected against possible default or malfeasance or misfeasance by the bond so given, without regard to its form or the correctness of its recitals. When one signs what purports and is intended to be an official bond, whether as principal obligor or surety, the law writes in all necessary recitals, including proper penalty. No other interpretation of the statute can subsist without disturbing the whole governmental system and ignoring the plain intendment of the legislative department. (87 Miss, at 558-559, 40 So. at 24)
In construing this statute we need look no further than the statute itself and the interpretation placed upon it by this Court. Since the foregoing decisions, the statute has been reenacted and brought forward in all our Codes in the precise language in which it was originally enacted in the 1880 Code. We have held in several cases that our interpretations of statutes which are subsequently reenacted by the Legislature by adoption of subsequent codes are required to be treated as a part of the statutes. In Yelverton v. Yelverton, 200 Miss. 569, 28 So.2d 176 (1946), we held that our interpretation of statutes that are subsequently reenacted makes such an interpretation so much a part of the statute that any modification must be made by the Legislature and not by the Court. It is clear to us that the interpretation heretofore placed on this statute by this Court is the correct interpretation, and should be followed until such time as the Legislature shall see fit to change the same. The question of whether the statute should be modified or changed is for the Legislature and not for this Court.
*591 For this reason we are of the opinion that the trial court was in error in limiting the liability of Employers Mutual Casualty Company to the penalty prescribed in the bond. The penalty of Moody’s bond should have been $33,985, and the penalty of $12,000 provided in the bond was not a proper penalty. In this situation, section 4033 writes into the bond the proper penalty required by law and binds the principal and surety for such amount. We hold that Employers Mutual Casualty Company upon executing the bond as surety became liable for the proper penalty, which in this case was $33,985, which results in its being liable for the amount which Moody misappropriated during his 1960-1964 term of office. However, Justices Jones and Smith do not agree with this holding and dissent therefrom.
Appellant’s other contention is that the trial court should have awarded interest against the sureties, as it did against Moody, from the date of each of his respective misappropriations, rather than from the date of the demand by the State Auditor.
Mississippi Code 1942 Annotated section 3877-05(6) (Supp.1966) provides that the State Auditor may bring suits in cases of this kind.
In State ex rel. Patterson v. Warren, 254 Miss. 293, 180 So.2d 293, 182 So.2d 234, (1965), the Court, in discussing the demand provided for in that section stated:
He (the auditor) must make (1) a “written demand,” (2) for “such amounts” withheld, misappropriated, or expended, (3) to be made upon the “person or persons liable for such amounts and upon the surety on official bond thereof.” (4) The demand must “grant to the person or persons upon whom it is made the privilege of paying * * * the amount demanded within thirty (30) days.” 254 Miss, at 304, 180 So.2d at 298.
In State v. American Surety Company, 37 N.M. 411, 24 P.2d 267, 89 A.L.R. 1314 (1933), in determining whether interest on the bond of a defaulting county treasurer began to run against the surety from the date of demand on his surety, the court said:
In the case of Clark County v. Howard, et al., supra, the Supreme Court of South Dakota, in holding that a surety should not be required to pay interest from the date of defalcation, but rather from the date of demand, said: “It seems particularly inept to say of a surety on an official bond, who not only does not know of the embezzlement but whose facilities for discovering that an embezzlement has been committed are so inadequate as compared with those of the obligee, that it was at fault in not paying the money from the time of the several acts of embezzlement.” 37 N.M. at 414, 24 P.2d at 269.
In In re Perelstine, 44 F.2d 62, 64 (W.D. Pa. 1930), the court said:
We next come to the charge of interest against Frederick. Is the surety company liable for that? There is no doubt about Frederick’s liability to pay interest, but a surety company is chargeable with interest only when it has failed to make good after the defalcation has been called to its attention. It seems to be conceded that this date was the time that Elliott Frederick was cited for contempt of court. From that date we hold the surety company chargeable with interest.
This rule was also followed in Cunningham v. Cunningham, 81 U.S.App.D.C. 300, 157 F.2d 859, 861 (1946), as follows:
* * * Nevertheless, interest in excess of the maximum penalty of the undertaking may become due from the surety, but only because of the surety’s own default. Nothing is due from the surety *592 until he is notified of his principal’s delinquency; if he then unjustly withholds payment, he is liable for interest because of his unjustifiable detention of the money. He is not required to take the initiative in making payment, and stands only as security until a claimant makes actual demand; then only does interest begin to accrue.
All Justices are in agreement that the trial court was correct in holding that Moody was liable for interest from the dates of the misappropriations, but that the sureties were liable only from the date demand was made on them by the State Auditor.
 We hold that Employers Mutual Casualty Company is liable as surety for $33,457.50, the amount of Moody’s misappropriations for the years 1960-1964, and that it is liable for interest on this amount from May 25, 1964, the date of demand on it by the State Auditor. It is liable for interest since that date, although the principal and interest exceed the proper penalty of the bond.
The decree of the chancery court is affirmed except that portion which awarded judgment against Employers Mutual Casualty Company in the amount of $12,-000 plus interest at the rate of six per cent per annum from the date of notice by the State Auditor. As to that part of the decree, it is reversed, and judgment is entered here in favor of appellant against Employers Mutual Casualty Company in the amount of $33,457.50, with interest on this amount at the rate of six per cent per annum from May 25, 1964, the date of demand by the State Auditor.
Suggestion of error sustained, former opinion withdrawn, and case affirmed in part, reversed in part, and judgment entered here.
All Justices concur, except JONES and SMITH, who dissent.